PARK, C. J., CARPENTER, LOOMIS, GRANGER AND STODDARD, Js.*

ROGERS & BROTHER *vs.* CEPHAS B. ROGERS AND OTHERS.

In 1858 two brothers named Rogers formed a copartnership for making silver-plated spoons, forks and knives, under the name of "Rogers & Brother," and in the following year a corporation was organized by them of the same name and for the same business, they being the principal stockholders. The firm and afterwards the corporation had adopted and used as a trade-mark, stamped upon the backs of the articles made, "*Rogers & Bro. A 1." In 1883 the defendants, a firm consisting of three partners of the name of Rogers, one of them being C. B. Rogers, under the name of "C. Rogers & Bros.," previously engaged in the making of other plated ware, entered upon the same manufacture and stamped upon their ware in the same way the following trade-mark, "C. Rogers & Bros. A 1." It was found that the word "Rogers" had for a long time been the conspicuous and valuable thing in various trade-marks used by different concerns upon such goods, and that the defendants in commencing the manufacture had in view the popularity in the market of plated goods bearing a stamp with that name, but that they used the stamp to designate their own manufacture and there was no intentional misrepresentation on their part. It also appeared that the mark "A 1" was in common use as a designation of the quality of goods. It was also found that the plaintiffs' goods bore a very high reputation in the market; also that the defendants' trade-mark would without difficulty be distinguished from the plain-

---

* Judge STODDARD of the Superior Court sat in the place of Judge PARDEE, absent on account of ill health.

tiffs' by dealers in the articles, and by retail buyers who looked beyond the word "Rogers," but that retail buyers who regarded only that word would be liable to confound one with the other. In a suit for an injunction against the use by the defendants of the trade-mark "C. Rogers & Bros.," and also against the use of the word "Rogers" in any trade-mark upon such goods, it was held that an injunction ought not to be granted against either. (Two judges dissenting.)

A manufacturer has the right to use his own name as a mark upon his goods although it be the same name with that of another manufacturer of the same goods, who makes the name a part of his own trade-mark, where there is no false representation in such use; and the majority of the court regarded the absence of all fraudulent designs and acts as established by the finding of facts in the court below.

[Argued June 3d—decided August 21st, 1885.]

SUIT for an injunction against the use by the defendants of the plaintiffs' trade-mark, for an account, and for damages; brought to the Superior Court in New Haven County. The plaintiffs were a joint stock corporation by the name of "Rogers & Brother," and the defendants a copartnership by the name of "C. Rogers & Brothers." The case was heard before *Beardsley, J.*, and the following facts found:—

The plaintiff corporation is located at Waterbury, in this state. Ever since its organization, in December, 1859, it has been extensively engaged in the manufacture of silver-plated spoons, forks and knives, and its yearly sales of such goods have, during that time, increased from $50,000 to $500,000, and its goods have had and have a high reputation.

About the year 1847, three brothers, all now deceased, namely, William, Asa H. and Simeon S. Rogers, engaged in the manufacture of electro-silver-plated spoons, forks and knives, at Hartford, in this state, under the copartnership name of "Rogers Brothers." They were among the first in this country to apply the process of electro-plating to the manufacture of such ware. They were honest and skillful in their art and business, and by reason of these personal qualities, as well as the then novelty of the art of electro-plating, the goods made and sold by them under their copartnership name obtained a high reputation in the public market. The spoons, forks and knives manufactured

by them were stamped thus :   " *Rogers Brothers A 1," or
" *Rogers Bros. A 1 ; " and such stamps then became well
known in the trade as indicating goods manufactured by
that firm, and were stamped upon all their first quality
goods, and acquired a trade value, and the goods became
known and had a valuable reputation as the Rogers goods.

In 1853 the copartnership of Rogers Brothers was organ-
ized into a joint stock corporation, under the name of the
Rogers Brothers Manufacturing Company, and the manu-
facture of electro-silver-plated spoons, forks and knives was
carried on by the corporation at Hartford until about the
year 1862 ; and during all that time the spoons, forks and
knives so manufactured were stamped as the goods manu-
factured by the copartnership which preceded the corpora-
tion had been, and such stamps continued to be well known
in the markets as indicating the goods manufactured at
Hartford by the concern that had been originally estab-
lished by the Rogers brothers, and the goods continued to
have the valuable reputation before mentioned.

In 1856 Simeon S. Rogers, one of the brothers forming
the original copartnership, but having no employment with
the above-mentioned corporation, made some business con-
nection with the Hartford Manufacturing Company, a cor-
poration then engaged in a similar business with the Rogers
Brothers Manufacturing Company in Hartford, and during
such connection (which continued till 1858), spoons, forks
and knives made by the Hartford Manufacturing Company
were stamped " Rogers A 1," without objection from either
of the other brothers or the Rogers Brothers Manufacturing
Company, and by such stamp the goods manufactured by
the Hartford Manufacturing Company became well known
in the public market.   The latter company was engaged in
this business before Simeon Rogers was connected with it,
but did not then use any stamp which had the name Rogers
in it ; and after the connection of Simeon Rogers with it
ceased, the corporation was in 1859, on application of the
Rogers Brothers Manufacturing Company, enjoined against
using any stamp with the word " Rogers " in it

In 1856 or 1857 William Rogers, another of the brothers, being then the president of the Rogers Brothers Manufacturing Company, disconnected himself from that concern, and with others organized a new corporation in the same business, under the name of " Rogers, Smith & Co.," and the spoons, knives and forks manufactured by this corporation were sent into the market stamped " * ♡ Rogers & Co., A 1," or " * Rogers, Smith & Co., A 1," and these stamps continued to be so used, without objection from any one, until about the year 1862; and the goods so manu· factured and stamped had a good reputation in the public market.

In 1858 these two corporations were consolidated, William Rogers becoming president of both, and their business was conducted as if one. The consolidation was confirmed by the General Assembly in 1862, during which year both corporations failed.

In 1858 Asa H. Rogers and Simeon S. Rogers, two of the brothers, formed a copartnership in Waterbury under the name of Rogers & Brother, and, under that name, engaged in the manufacture of electro-silver-plated ware. The partnership adopted and used in its business the stamp " *Rogers & Bro., A 1," and stamped the same upon the back of the shanks of all its first quality forks and spoons. The said Asa and Simeon were well aware that their name " Rogers," as a part of the stamps previously used, had already, by reason of its use in those connections, upon spoons, knives and forks as before mentioned, acquired a reputation of value in the public market, and they adopted, claiming the right so to do, their partnership name and said stamp in the expectation that they would thereby be able to avail themselves to some extent of the reputation existing in the market in connection with the manufactures of the Hartford concerns before mentioned, and in which they had been two of the three constituting the firm of " Rogers Brothers," and they prepared and circulated extensively among the trade a circular setting forth this fact.

They continued to carry on business as partners until

December, 1859, when the plaintiff corporation was organized, and acquired by purchase all the property and business of the firm, including its stamp and good will, and has ever since used the stamp in its business, always stamping it upon all its first quality knives, forks and spoons, upon the back of the shank of the forks and spoons, and this use of the stamp by the plaintiffs was never objected to by any of the brothers. The said Asa H. and Simeon S. were associated with others in the formation of the corporation, and became stockholders and officers therein.

In 1862 William Rogers, Asa H. Rogers and Simeon S. Rogers, having then no connection with the plaintiff company, formed, and for some time thereafter continued a business connection with the Meriden Britannia Company, a corporation located at Meriden, under certain contracts, by virtue of which the Britannia Company claimed the right, and thereupon commenced, to stamp spoons, forks and knives of its manufacture with the stamp "1847, Rogers Bros. A 1," and issued to the trade circulars, recommending their goods so stamped, and it has ever since claimed the right to so stamp such articles of its manufacture, and, under such claim, it has put upon the market a very large amount of goods so stamped, and such goods have had a good reputation in the public markets. At the time this connection was formed by the three Rogers brothers with the Meriden Britannia Company there was no other company, except the plaintiff, doing a similar business, and using a stamp which had the word "Rogers" in it.

In the year 1865 the Meriden Britannia Company obtained, by arrangement with the plaintiff corporation, a controlling interest in its stock, and the plaintiff corporation became also interested in the stock of the Meriden Britannia Company, and this arrangement has ever since continued between them. The motive of this arrangement was to avoid litigation respecting the Rogers name, and to provide for its use in common by the two concerns.

In 1865 William Rogers left the employment of the Meri-

den Britannia Company, and a copartnership was formed in Hartford under the name of "The William Rogers Manufacturing Company," for the purpose of manufacturing electro-silver-plated spoons, forks and knives, with which copartnership he remained connected until he returned to the Meriden Britannia Company in 1868, under a further contract. This company adopted and used the stamps "‡ Wm. Rogers & Son, A A," and "1865, Wm. Rogers Mfg. Co. A A."

In 1872 a joint stock corporation was formed, under the same name, to succeed the copartnership of the William Rogers Manufacturing Company, and to carry on the same business, and this corporation has ever since carried on such manufacture extensively, the plaintiff corporation and the Meriden Britannia Company having had for several years a half interest therein ; and it continued and still continues to use said stamps.

During the period of manufacture by the copartnership and corporation of the William Rogers Manufacturing Company, the goods manufactured by such concerns respectively have been stamped with said stamps, and sent into the market in large quantities ; the concerns respectively claiming the right so to do ; and such goods so stamped have had and have a good reputation in the market.

In June, 1871, Asa H. Rogers and William H. Watrous formed a copartnership for the manufacture of electro-silver-plated spoons, forks and knives, in Hartford, under the name of "W. H. Watrous," but Asa H. Rogers was not publicly known as interested therein, although he gave his time and service to it from January to September, 1871, and was an equal partner with Watrous.

In September, 1871, a joint stock corporation was formed, under the name of the "Rogers Cutlery Company," to carry on the same business. The stockholders appearing upon the stock book of the company were Theodore Rogers of Waterbury, who was not of the family of the Rogers brothers before mentioned, but a salesman with the plaintiff corporation, H. H. Moore, W. H. Watrous and the

wife of the latter.   Theodore Rogers was the only person of the name of Rogers openly known to be connected with the company or its name.  Asa H. Rogers was never openly connected with this corporation upon its records, but was the real owner of one-half of its stock.

The spoons, forks and knives made by this corporation were stamped with a stamp containing the word "Rogers," and were sent into the market from 1872 to March 14th, 1879, so stamped, the knives in considerable quantities, the spoons and forks not to any great extent.

In March, 1879, an arrangement was made between the William Rogers Manufacturing Company and the corporation of the Rogers Cutlery Company, by which there was an exchange of stock, and both companies came under the same management, and the president of the Rogers Cutlery Company became president and manager of both companies. Since this arrangement the Rogers Cutlery Company has stamped its knives generally with the stamp " Rogers Cutlery Company," and it has issued business circulars to the trade.

Since the arrangement, before mentioned, of March, 1879, the two concerns, the William Rogers Manufacturing Company and the Rogers Cutlery Company, although, for purposes of trade and in public, keeping up their distinct organizations and names and stamps, have been in fact and actual operation but one concern, and both under the superintendence and management of W. H. Watrous; and besides the stamps before mentioned, they have also sometimes used the stamp "Rogers Silver Plate Co." upon job lots of spoons and goods.   There is no company, in fact, of the name of the Rogers Silver Plate Co., and the stamp was arbitrarily adopted by these corporations for the special purpose mentioned.

In 1862 the Hartford corporation of Rogers, Smith & Company, before mentioned, failed and went into insolvency by assignment in the probate court of Hartford. Soon after a new corporation was formed in New Haven under that name, and which purchased the assets of that

corporation, for the purpose of manufacturing electro-silver-plated spoons, forks and knives. About 1863 this corporation sold out to the Meriden Britannia Company, and its business was removed to Meriden, and its nominal organization has been ever since kept up, but its business has been actually carried on by the Meriden Britannia Company, and that has been so understood by the trade generally. From the organization of the corporation to the present time large quantities of goods have been sent into the market stamped with its name, and the corpora tion has been held out to the public as carrying on an inde pendent manufacture, and their business has been kept separate and distinct. Neither of the Rogers brothers before mentioned has been in any way directly connected with this corporation.

In 1866 a joint stock corporation was formed at Meriden under the name of A. H. & S. S. Rogers Brothers, in pursuance of a contract between the Meriden Britannia Company and Asa and Simeon Rogers ; and spoons, knives and forks were thereafter, to a very limited extent, sent into the market by the Meriden Britannia Company stamped " A. S. & S. S. Rogers Brothers." The corporation, although having a nominal organization, never actually manufactured goods.

Of these several concerns, with which the three Rogers brothers, or some of them, were connected, none has been in business since 1862, except as herein before found.

The goods made by the Meriden Britannia Company, William Rogers Manufacturing Company, Rogers Cutlery Company, and the plaintiff, and stamped as aforesaid, have always been equal to or better than the goods made by the three Rogers brothers, and have always had a high reputation in the market.

In 1863, and until the arrangement above stated of the Meriden Britannia Company with the plaintiff corporation in 1865, that company was the only competitor of the plaintiff using a " Rogers " stamp.

The plaintiff corporation of Waterbury, the Meriden

Britannia Company of Meriden, the William Rogers Manufacturing Company, and the Rogers Cutlery Company of Hartford, although having had, to a certain extent, common stock interests, as before stated, have conducted their respective manufacturing business and made their sales independently of each other and in the same manner as before such arrangements of stock interests. They have been competitors in the public markets. Each has claimed for itself the manufacture of a superior quality of goods. Each has claimed in certain advertising circulars to be the manufacturer of the only "genuine Rogers" goods, and to be legitimately entitled to the reputation which was attached to the original "Rogers Brothers."

All the goods made by the plaintiff stamped with said stamps have been of superior quality, and have had a high reputation in the market. The standard of quality adopted and used by the three Rogers brothers has not only been maintained, but the amount of silver put upon the goods has been from time to time increased, and the quantity of silver now used by the plaintiff is twenty-five per cent. in excess of that used by Rogers Brothers. The plaintiff has also from time to time made improvements in the style and workmanship of its goods, and has greatly improved the quality of its spoons by thickening the shanks.

The reputation of the plaintiff's goods is very much higher than was that of the goods made by the copartnerships, Rogers & Brother and Rogers Brothers, and the plaintiff's knives, forks and spoons are of a quality much superior to those made by those copartnerships or by any other party prior to the organization of the plaintiff corporation. Said stamp of the plaintiff has never been used except upon first quality goods, and the use of the same has been and is of great value to the business of the plaintiff.

By reason of the numerous stamps on spoons, forks and knives containing the word "Rogers," as before mentioned, and of the efforts of the various concerns who have used such stamps since 1847 to promote the sales of their goods

as " Rogers goods," the word " Rogers " has become the conspicuous and familiar part of such stamps with a large class of retail buyers ; and while jobbers and dealers, and those retail buyers who are informed of the facts, readily distinguish between the stamps of the different manufactories by the words or symbols which such stamps do not possess in common, those retail buyers of the articles who buy by the stamp or the single article, look only to the word " Rogers," and are for this reason liable to confound the various stamps ; but generally the retail buyers who desire any information on the subject of the manufacture of the goods, rely upon the dealer for such information.

The plaintiff corporation, since its organization, has circulated price lists and advertisements extensively in the markets and among the trade.

William Rogers died in 1873, Simeon S. Rogers in 1874, Asa H. Rogers in 1876.

In the year 1866 the defendants, who are brothers, formed at Meriden their present copartnership under its present name of C. Rogers & Brothers, and there commenced the manufacture and sale of electro-silver-plated coffin trimmings. From that time to the present they have carried on business at the same place, and under the same copartnership name. The business so carried on has been principally the manufacture and sale of electro-silver-plated coffin trimmings, but for several years they have also dealt in and held themselves out to the public as manufacturers of a large variety of articles of furniture hardware, and of electro-silver-plated spoons, forks and knives. The articles of furniture hardware dealt in by them have been partly of their own manufacture ; the spoons, knives and forks wholly of the manufacture of others, except as they were at one time connected with Charles Parker, under an arrangement which appears in the case of *Meriden Britannia Company* v. *Parker*, 39 Conn., 450.

The defendants have never stamped any of their goods with any mark, name or trade-mark, except as the spoons, knives and forks made by them recently have been stamped.

as herein stated. During the year prior to the commencement of this suit the defendants made extensive preparations and a large investment of capital for the purpose of carrying on the manufacture of silver-plated spoons, forks and knives, in connection with their other manufacturing business. Including this manufactory, their present investment of capital is between $300,000 and $400,000, and they employ about two hundred hands. Their business has gradually increased, and is now, and for some time has been, large and extensive, being carried on in all parts of the United States, and, to some extent, in the British provinces. They employ several local agencies and numerous traveling salesmen, and have acquired in such business an extended and valuable business reputation, doing a business in coffin trimmings averaging from $45,000 to $60,000 a year. A little less than one fourth of their customers deal in silver-plated spoons, forks and knives.

Since they have engaged in the manufacture of silver-plated spoons, forks and knives they have stamped upon the articles so manufactured by them, " C. Rogers & Bros. A 1," and they have sent such goods into the market mainly by their usual agencies and salesmen.

This stamp, " C. Rogers & Bros. A 1," is stamped upon the backs of the shanks of the spoons and forks in the same manner and place as the plaintiff's goods are and have been stamped. The method of stamping their name upon such articles manufactured by them, and the locality of the stamp upon the article, has been that commonly employed by manufacturers of such silver-plated articles for many years. The mark " A 1 " has been frequently used by manufacturers of such ware for many years as a mark of quality, and is so regarded in trade.

The purpose of the defendants in stamping their firm name upon the spoons, forks and knives so manufactured by them has been to indicate to the public that they are the manufacturers of the goods so stamped. But the defendants in commencing the manufacture of such articles had in view the popularity in the market of such goods bearing

a stamp containing the word " Rogers," and one induce-
ment to commencing such manufacture was the advantage
they might derive from having their goods so stamped. The
allegations of fraudulent design and acts on their part con-
tained in articles eleven to sixteen of the complaint are
found not to be true.

Between the stamps so used by the defendants and the
stamps used by the plaintiff upon similar articles manufac-
tured by them respectively, the dealers and jobbers in such
articles have no difficulty in distinguishing. And this is
also true of those retail buyers who look beyond the word
" Rogers ; " but those who regard the word " Rogers " only
would be liable to confound one with the other, as in the
case of the various " Rogers " stamps before mentioned.
Retail buyers sufficiently acquainted with the various " Rog-
ers " stamps in the market, to distinguish between the same,
would have no difficulty in distinguishing between the two
stamps of the plaintiff and defendants, but the general
resemblance between the two stamps is such that a per-
son knowing that of the plaintiff and not knowing that of
the defendants, might, upon referring to it, but not reading
it attentively, mistake it for that of the plaintiff.

Upon the foregoing facts the plaintiff claimed, and asked
the court to hold, as follows :—

1. That the defendants should be enjoined from the use
of the combination of words, " C. Rogers & Bros.," on
silver-plated knives, spoons and forks.

2. That the defendants should be enjoined from such use
of the word " Rogers " as a part of any stamp or mark on
the shank of silver-plated spoons and forks, in connection
with or without the letters and figure, " A 1," as that pur-
chasers will be liable to believe that spoons and forks so
marked and made by the defendants were made by the
plaintiff.

3. That the defendants should be enjoined from the use
of the word " Rogers " in any way, as a stamp upon silver-
plated knives, spoons and forks.

But the court overruled these claims, and rendered judgment for the defendants. The plaintiff appealed.

*F. Chamberlin* and *O. H. Platt*, with whom were *J. P. Platt* and *H. R. Mills*, for the appellants.

The plaintiffs are lawfully and honestly using the stamp "\*Rogers & Bro., A 1," upon silver-plated spoons, forks and knives, and have used and advertised said stamp as their trade-mark continuously since 1859. The defendants, members of another family, and previously engaged in the manufacture of plated coffin trimmings, were induced, among other things, by the popularity of the Rogers goods, and the advantage they might derive from stamping such goods with that name, to commence the manufacture and sale of silver-plated spoons, knives and forks, and have stamped the same " C. Rogers & Bros., A 1," so that the goods of the defendants are liable to be mistaken for goods of the plaintiffs.

Except as associated with Charles Parker in the use of this same stamp (which use was enjoined by the court in *Meriden Britannia Co.* v. *Parker*, 39 Conn., 450), the defendants have never, until the spoon and fork business herein complained of was commenced, used any stamp, mark or trade-mark upon any of their goods, which include silver-plated coffin trimmings and a large variety of articles of furniture hardware, and of electro-silver-plated spoons, forks and knives. The defendants, in commencing the manufacture of such articles, had in view the popularity in the market of the similar goods bearing a stamp containing the word " Rogers," and one inducement to commencing it was the advantage they might derive from having the goods so stamped.

This stamp," C. Rogers & Bros. A 1," is stamped upon the backs of the shanks of the spoons and forks in the same manner and place as the plaintiffs' goods are and have been stamped. The similarity of the stamps best appears upon the goods themselves as they are before the court ; but the court below has found that " the general resemblance be-

tween the two is such that one knowing that of the plaintiff and not knowing that of the defendants, might, upon referring to it, but not reading it attentively, mistake it for that of the plaintiffs;" and that "those who regard the word 'Rogers' only would be liable to confound one with the other."

The pleadings of the plaintiffs set forth substantially the foregoing facts, and allege that the defendants commenced the manufacture of silver-plated spoons, knives and forks, and stamped them "C. Rogers & Bros. A 1," and that said stamp is a close imitation of the plaintiffs' stamp "*Rogers & Bro. A 1;" also that the plaintiffs, on the first day of August, 1883, requested the defendants to cease using the stamp so used by them as aforesaid, which they refused to do. The defendants not denying such request, it is deemed to be admitted; and they also admit that they have so used said stamp and claim the right so to do. The use by the respective parties of the marks "*Rogers & Bro. A 1" and "C. Rogers & Bros. A 1," is admitted substantially as alleged by the plaintiffs.

But the defendants deny any fraudulent intent and acts, as set forth in paragraphs eleven to sixteen of the complaint, and aver that they use their own partnership name, believing they have the right so to do—stamping it upon their manufactured articles in the usual manner, and for the sole purpose of indicating that such articles were manufactured by them, and availing themselves of the reputation which they have acquired in the public markets. The principal contention between the parties in their pleadings grows out of the allegations of positive fraudulent acts, or of constructive fraud resulting from the acts, set forth in the paragraphs of the complaint mentioned.

The affirmative allegations of the plaintiffs are met by the affirmative, counter and inconsistent allegations of the defendants; thus creating an issue to be passed upon by the trier, who distinctly negatives the claim of the defendants in the finding that the "popularity which the defendants had in view, and of which they wished to derive the advan-

tage," was not that which they (the defendants) had acquired in their business, but was "the popularity in the markets of spoons, knives and forks bearing a stamp containing the word 'Rogers,'" and which it clearly appears, from the facts proved, had been established by the plaintiffs and others, under whom the defendants do not claim. He then finds that "the allegations of fraudulent design and acts on their part, contained in articles eleven to sixteen of the complaint, are found not true."

The defendants, quoting only the last sentence of this finding, claim that the element of fraud "is negatived in every form" and entirely eliminated from the case. But the plaintiffs contend that the effect of the finding is not to strike out from the case all fraud, but to convey accurately to this court the precise fraud which the defendants had in mind as the "inducement to commence the business," and which they are seeking to accomplish. To do this the court finds that—(1) "The business of the defendants has been principally the manufacture and sale of silver-plated coffin trimmings." (2) "The spoons and forks dealt in by them have been wholly of the manufacture of others, except as they were connected with Charles Parker." (3) "They never have stamped any of their goods with any mark, name or trade-mark, except as the spoons and forks made by them recently have been stamped as before stated." (4) "The purpose of the defendants in stamping their firm name upon the spoons, etc., manufactured by them, has been to indicate that they were the manufacturers. But the defendants, in commencing the manufacture of such articles, had in view the popularity of goods bearing a stamp containing the word 'Rogers,' and one inducement to commencing such manufacture was the advantage they might derive from having goods so stamped."

Actuated by these motives they have put this stamp upon their spoons, knives and forks, and without other representations, simply sent out the goods so marked, allowing the stamp to secure to them such advantage as it necessarily must. No direct representations, outside of their stamp,

were needed, and they were careful so to conduct themselves that extrinsic acts of fraud could not be proved against them. And so the court below has set out the facts, stating explicitly the knowledge, animus, inducement and circumstances of their " commencement" of the manufacture and use of the stamp, and then finding that allegations of other fraudulent acts and design were not true.

The stamp " \*Rogers & Bro. A 1 " is the plaintiffs' trademark, and not merely a trade name, which they use in their business, as the defendants have used their partnership name " C. Rogers & Brothers " without stamping it on their goods —not merely " Rogers " or their own corporate name " Rogers & Brother," but " \* " (the symbol), " Rogers " (the name), " & " (the connecting character), " Bro." (the abbreviation)—all connected and allocated, and used with the affix " A 1." Thus connected and stamped upon our goods, this is our trade-mark. Its use, and the purpose of its use, by the plaintiffs, are set forth and admitted in the pleadings. The pleadings allege and admit that the plaintiffs have always used this stamp for the purpose of indicating the maker of the goods.

" That any name, symbol or device, adopted by an individual, corporation or business firm for the purpose of designating the origin or ownership of goods manufactured by them, will be protected as a trade-mark, is well settled law. The name of a corporation or a partnership accomplishing the same object, will be protected upon the same principle." *Holmes, Booth & Hayden* v. *Holmes, Booth & Atwood Manf. Co.*, 37 Conn., 292. This name is the best possible trademark, as it, of itself and by its own force, shows the origin of the goods and the name of the manufacturer.

Upton, in discussing the question what constitutes a trademark which will be entitled to protection, after a review of the cases, and the opinions of eminent judges, says :—" The simplest case of a trade-mark fulfilling the condition of the law, and thereby entitling him who adopts it to protection in its exclusive use, is the name and address of the manufacturer." Upton on Trade-Marks, 99. " It is precisely to

the extent that any name, device or symbol, adopted as a designation for merchandise, is effectual in performing the office of the name and address of the manufacturer, that it complies with the essential requisite to the acquisition of an exclusive right to its use." Id., 102. After referring on pages 109–112 to the cases of *Thompson* v. *Winchester* ("Thompsonian Medicines"), *Singleton* v. *Bolton* ("Dr. Johnson's Yellow Ointment"), and *Canham* v. *Jones* ("Velno's Vegetable Syrup"), as cases where the name of the person had acquired, as to those medicines, such generic meaning as not to be a proper trade-mark, he says, on page 113:—"These several cases of exceptions to the general rule, for the reasons which make them exceptional cases, serve to illustrate the character of the principle upon which the general rule is based. Certainly no name or mark or symbol that can be devised more faithfully fulfills the condition of designating the origin or ownership of the manufactured article than the name and address of the manufacturer. But when this precise name has been previously adopted, and has become known as the brand or trade-mark for the production of the particular person whose name it is, if it be used by another person who happens to have the same name as a designation for his production of a similar character, it is obvious that by reason of its previous adoption and notoriety it altogether fails to distinguish and identify the manufacture of the second party, and on the contrary, that such use must necessarily operate (as in such cases no doubt was the design,) to produce the belief on the part of the public that they are the productions of the principal manufacturer, with whose goods it has become identified." Id.

Given a trade-mark which, through a quarter of a century of honest work, has come to be a guaranty of the highest excellence of the goods which bear it, which has become known as the synonym of honest goods in all the markets of America, and which, having been stamped upon each article of the plaintiffs' goods, " has become of very great value" to them; can a new manufacturer, knowing the popu-

larity of the stamp, and entering upon a similar manufacture with a view to the advantages which he may derive from such popularity, stamp his similar articles with substantially the same stamp, and start off in business with the advantage of prestige and reputation which the plaintiffs have so built up and earned? Manifestly such a thing would be a gross injustice.

But these defendants are obliged to reply: "Yes; he may if his family name happens to be the leading and significant word in the trade-mark." Is the reply sustained? and upon what possible ground? The defendants' only response to this question is the iteration and reiteration of the proposition—"Every man has a right to do business in his own name."

This general proposition—with the qualification that he so do his business that he does not, in intent or result, injure his neighbor previously established in the same business, may be admitted. That Charles Parker cannot use the stamp here used by the defendants, even when used by request of the defendants and in the manufacture of goods for the defendants, has been decided by this court in 39 Conn., 450, as we have seen.

In deciding this question of infringement, the only difference between the case of one who uses his own name for a stamp and one who uses a name not his own, is, that in favor of the owner of the stamp claimed to have been imitated and infringed, the former is presumed to use it for an honest purpose, while as to the latter fraud is presumed. In Parker's case the injunction was issued in spite of a clear finding of good faith, on the ground that the injury to the plaintiffs was the same. The wrong to the plaintiffs here is precisely what it was to the Meriden Britannia Co. in Parker's case—the injurious appropriation of the good will of the plaintiffs' business, and of the popularity of their goods in the markets.

But here the finding, while negating certain affirmative allegations of the plaintiffs, and also affirmative averments of the defendants in reply, expressly finds all necessary

fraud in the following clause :—" The defendants, in commencing the manufacture of such articles, had in view the popularity in the market of such goods bearing a stamp containing the word 'Rogers,' and one inducement to commencing such manufacture was the advantage they might derive from having their goods so stamped."

The " necessary consequence of their acts," in manufacturing by their own hand, and selling, the same goods, bearing the same stamp, which they had previously sold when manufactured for them by Parker, in pursuance of their contracts with him, would be to inflict upon the present plaintiffs damage similar to that which they had inflicted upon the Meriden Britannia Co. by the former infringement, and to obtain for themselves alone profits which had before been divided between them and Parker.

Our case in this aspect is like that of *Royal Baking Powder Co.* v. *McQuade* (U. S. Circuit Court, Illinois District), Cox's Trade-Mark Cases, 671, in which Judge BLODGETT says :—" I think it is very manifest that there was an intention on the part of the manufacturer of this, the defendant's powder, to obtain the benefit of whatever labor and effort the complainant has used to give reputation and character to his goods." And like that of *Trainor* in which Judge CLIFFORD says :—" Of course, they meant to secure to their goods a preference which they otherwise would not have commanded ; and it is difficult, if not impossible, to see how any such advantage could be gained, unless the simulated trade-mark would enable them to sell their fabric as that of the injured party." *Trainor's Case,* 101 U. S. Reps., 67.

The " of course " which Judge CLIFFORD acts upon, is here anticipated by the express finding of the trier. This finding plainly indicates a purpose of the defendants (in commencing this manufacture) to infringe the plaintiffs' trade-mark, and appropriate to their advantage its popularity as containing the word "Rogers." It is equivalent to a finding that they intended to "invade the property of the plaintiffs." *Wotherspoon* v. *Currie,* L. R., 5 H. L. Cas., 508.

And "that the object was to obtain a slice of the large business carried on by the plaintiffs." BAGGALLAY, L. J., in *Massam* v. *Thorley's Cattle Food Co.*, L. R., 14 Ch. Div., 763–781. Such use must necessarily operate (as in such cases no doubt was the design,) to produce the belief on the part of the public that they are the productions of the first manufacturer, with whose goods it (the name) has become identified." Upton on Trade-Marks, 113. In his opinion in the case of *William Rogers Manf. Co.* v. *Rogers & Spurr Manf. Co.*, 11 Fed. Rep., 495, Judge LOWELL says :—" Even if we grant all that has been said about the freedom to use names (and I grant upon that subject much more than has been argued, for I set no limits to that freedom, excepting interference with acquired rights), the books are full of cases in which defendants have been restrained from using their own names in a way to appropriate the good will of a business already established by others of that name. *Croft* v. *Day*, 7 Beav., 84 ; *Metzler* v. *Wood*, L. R., 8 Ch. Div., 606 ; *Fullwood* v. *Fullwood*, L. R., 9 id., 176 ; *Levy* v. *Walker*, L. R., 10 id., 436 ; *Massam* v. *Thorley's Cattle Food Co.*, L. R., 14 id., 748 ; *McLean* v. *Fleming*, 96 U. S. Reps., 245 ; *Devlin* v. *Devlin*, 69 N. York, 212 ; *Filkins* v. *Blackman*, 13 Blatch., 440 ; *Stonebraker* v. *Stonebraker*, 33 Maryl., 252 ; *Shaver* v. *Shaver*, 54 Iowa, 208 ; *Churton* v. *Douglas*, Johns. (Eng.), 174. And see 25 Albany L. Jour., 205. All these cases in equity depend upon an appropriation by one person of the reputation of another, sometimes actually fraudulent, and sometimes only constructively so."

One of the defendants' briefs in the former hearing of this case opens as follows :—" It is more than thirty years since Lord Justice Knight BRUCE made his memorable declaration in *Burgess* v. *Burgess*, 17 Eng. Law & Eq., 257, that " all the Queen's subjects have a right, if they will, to manufacture and sell pickles and sauces, and not the less that their fathers have done so before them. All the Queen's subjects have a right to sell them in their own names, and not the less so that they bear the same name as their fathers ; and nothing else has been done in that which is the question

Rogers & Brother *v.* Rogers.

before us." But a quarter of a century later (in 1880), in the highest court in Great Britain, Lord Justice JAMES says of that decision :—" Now *Burgess* v. *Burgess* has really been very much misunderstood if it has been understood to say that anybody can always use his own name, as a description of an article, whatever may be the consequence of it, or whatever may be the motive for doing it, or whatever may be the result of it." Thus the highest court in Great Britain is in accord with the late utterance of Judge LOW-ELL in our United States Circuit Court above quoted.

This stamp, which the defendants propose to use as a trade-mark upon their goods, serves them better than another, only as " securing the advantage of a popularity" not belonging to them, and of which they cannot possess themselves without damage to the plaintiffs. This, it is found, induced them to commence the business. In short, they adopted this business to " secure the advantage they might derive" from this stamp. This a court of equity will not permit. Common honesty would suggest the adoption of a stamp to protect one's own business ; here a business is adopted, the "inducement" to which is that the defendants hope to be allowed to make use of a stamp which will steal another's business.

*C. R. Ingersoll* and *C. E. Mitchell*, with whom was *G. A. Fay*, for the appellees.

*First.*—The facts of the record compel the plaintiff to this position of law—that the plaintiff, as a manufacturer of electro-silver-plated spoons and forks, may (apart from contract) have such a right of trade-mark in the word " Rogers " that no other person lawfully engaged in a similar manufacture under that personal name can, as against the plaintiff, stamp the goods of his manufacture with his own name, in the manner customary with silver-plated spoon and fork manufacturers, to indicate the name of the manufacturer of their goods. It is safe to say that, within the entire range of English law, no decided case has yet been recorded to support this proposition. On the contrary,

we submit that no manufacturer can gain a right of trade-mark in his personal name merely, as against another manufacturer bearing the same name. For the office of a trade-mark is to distinguish the goods of the manufacturer using it from the goods of every other manufacturer of the same article dealing in the same market; and this a personal name may not do. And therein lies the occasion for a trade-*mark* or symbol, having in itself an absolute distinctiveness, as a substitute for the personal name of the trader. Such symbol can have no significance but its own. It can point to one trader only—the one whose exclusive symbol it is. And, therefore, it cannot be innocently copied by any other trader. Nor, if used by another than the one whose goods it distinguishes, can such use ever be rightful. And this irrespective of motive; for the injury to the one whose right to use such symbol is exclusive is the same, whether the motive of the infringer be evil or innocent. But a personal name cannot, necessarily, have this distinctive and exclusive significance. It must always be liable to confusion with the same name when belonging, by an equal birth-right, to other traders in the same market. These are elementary principles. They are illustrated by the following cases: *Meneely* v. *Meneely*, 62 N. York, 427; *Carmichel* v. *Latimer*, 11 R. Isl., 395; *Faber* v. *Faber*, 49 Barb., 358; *Clark* v. *Clark*, 25 Barb., 76; *Williams* v. *Brooks*, 50 Conn., 280; *Canal Co.* v. *Clark*, 13 Wall., 311; *McLean* v. *Fleming*, 96 U. S. Reps., 245; *Comstock* v. *Moore*, 18 How. Pr. R., 424; *Gilman* v. *Hunnewell*, 122 Mass., 139. And, therefore, the U. S. trade-mark act of 1870 forbade the registry of any trade-mark consisting of the "name of a person, firm or corporation only, unaccompanied by a mark sufficient to distinguish it from the same name when used by other persons." And the English "Trade-mark Registration Act" of 1875, 38 and 39 VICT., c. 91, only recognizes "the name of an individual or firm," as a trade-mark, when it is "printed, impressed or woven in some particular and distinctive manner."

But the right of the manufacturer to protection against

another's fraudulent personation of himself by means of a personal name is, none the less, obvious and adequate. And the cases of this sort are abundant. They fall into two general classes—(1) where the complaining manufacturer's name has been assumed by another, to whom the name does not rightfully belong, for the purpose of personation; or, (2) where the personation is effected by a person to whom the name does rightfully belong but who so uses it, by means of accompanying false devices, as to induce the belief that it is not his own name but is the name of the complaining manufacturer. In both these classes of cases the fraud will be stopped—in the one case the fraudulent assumption of the name, in the other the use of the false devices. In the first of these classes the personation is commonly attempted by the organization of a corporation under an assumed personal name. The cases particularly relied on by the plaintiff here, *William Rogers Manf. Co.* v. *Rogers & Spurr Manf. Co.*, 11 Fed. Rep., 495, *Holmes* v. *Holmes*, 37 Conn., 278, and *The Thorley Cattle Food Case*, 42 L. J., N. S., 851, and L. R., 14 Ch. Div., 748, are of this class. The *Glenfield Starch Case* (*Wotherspoon* v. *Currie*), L. R., 5 H. L. Cas., 508, is within the same principle. In *Meriden Britannia Co.* v. *Parker*, 39 Conn., 450, both plaintiff and defendant were using in their stamps an assumed personal name. The court held that the name constituting a part of the plaintiff's stamp was that of the persons actually concerned in the manufacture of the plaintiff's goods (which was not the case with the defendant), and, therefore, the entire mark was entitled to protection. But it still refused to enjoin the use of "the mere name." In the other class of cases, we have noticed, the false personation is accomplished by fraudulent devices connected with the use of the defendant's rightful name—the effect of the devices being to pervert the rightful significance of the name. *Holloway* v. *Holloway*, 13 Beav., 209; *Burgess* v. *Burgess*, 3 De G., M. & G., 896; *James* v. *James*, L. R., 13 Eq., 421; *Fullwood* v. *Fullwood*, L. R., 9 Ch. Div., 176; and *Clark* v. *Clark*, *supra*,—are familiar instances of this

class. The *Thorley Cattle Food Case*, in one of its aspects, also comes within it. In all of these cases the use of the fraudulent devices was enjoined, but in none of them the use of the name without the devices. In the editor's note to *Meriden Britannia Co.* v. *Parker*, in 12 Am. Reports, 401, the cases of this class are collected, with the conclusion that "in such cases the use of such (connected) mark or device or the practice of such acts will be restrained, but not the use of the name."

The present case cannot be brought within either of these two classes of cases. The firm name stamped by the defendants upon the goods of their manufacture is the firm name under which, as the record finds, they have carried on business as manufacturers for nearly twenty years and which has a valuable reputation in the markets of the country. And "Rogers" is the birth-name of each one of the several members of the firm. The finding expressly negates the use by the defendants of any devices or practice of any arts, to give to the use of their own name any wrongful significance. And the only error complained of in the plaintiff's appeal is that the court below did not enjoin the defendants from stamping either their firm name merely, or their family name of "Rogers" merely, upon their goods.

*Second.*—The record not only negates the specific allegations of fraud contained in the complaint, but it expressly finds that "the purpose of the defendants in stamping their firm name upon the spoons and forks so manufactured has been to indicate to the public that *they* are the manufacturers of the goods so stamped." It is not possible, by anything else in the finding, to distort this into a finding that the purpose of the defendants has been to indicate to the public that *the plaintiffs* are the manufacturers of the goods so stamped. But suppose the inference to be admissible, that the motive of the defendants in engaging in the silver-plated spoon and fork manufacture, and stamping the goods of their manufacture with their name, was to profit by the popularity that had already been given to the "Rogers" name in such manufacture. How can the existence of any

Rogers & Brother v. Rogers.

such mental motive, whether as hope, expectation or purpose, rightfully debar the defendants from engaging in such business under their own name, or, when so engaged in it, from carrying it on in precisely the same manner that they might carry it on had their names not happened to be Rogers? The injury complained of by the plaintiff is that purchasers mistake the defendants' name, when stamped upon spoons and forks, for the plaintiff's name. Is this injury affected, in any degree, by the motive of the defendants? Clearly, the liability to mistake by the purchaser is equally great whether a good or a bad motive be imputed to the defendants. In the recent case of *Singer Machine Manufacturers* v. *Wilson*, L. R., 3 App. Cas., 391, it is said: "But if a man has legitimately a right to the property in an exclusive use of a name, it is of small account to him should it be invaded, whether the invasion comes from a purpose to deceive, or from ignorance or inadvertence, or an honest misconception of the relative rights of the parties." And so, conversely, it must also be true that if a man has not legitimately a property right in the exclusive use of a name, his inquiry into the motive of another man, who has an equal right to the use of the name, is immaterial. Clearly, the right to such exclusive use cannot depend either upon the good motive of the man asserting it or the bad motive of the man denying it. It would be a curious injunction which should restrain a certain act, or not, according to the intention of the defendant in doing the act. And, therefore, as we have seen, in *Burgess* v. *Burgess*, *Holloway* v. *Holloway*, *James* v. *James*, *Fullwood* v. *Fullwood*, and the other cases of their class cited, where the purpose of the defendant to avail himself of the trade reputation of the plaintiff was clearly manifested by the fraudulent devices with which he accompanied the use of his name, the use of the name was, in no instance, enjoined; although in every case the accompanying devices were enjoined. The inconvenience that may result from the common use of a name to which each party has equal right is *damnum absque injuriâ*.

*Third.*—The plaintiff's conduct disentitles it to the relief asked. The very principle which it invokes against the defendants is fatal to its own case. It is itself sailing under false colors. Its corporate name was taken and the record and even the complaint itself shows, that its stamp is and has been used for the purpose of inducing the public to believe that its goods are made by "the genuine and original Rogers brothers," that is, by William, Asa and Simeon Rogers, who carried on the manufacture of similar goods at Hartford as the copartnership of Rogers Brothers from 1847 to 1853, and by whose personal efforts the original "Rogers" reputation was created, but who are all long since dead. The record shows that the plaintiff is now falsely holding itself out as carrying on a business which was thus established by these brothers at Hartford in 1847, and by them thereafter removed to the plaintiff's present factory in Waterbury. Equity will never enjoin a trademark that tells the truth. Nor will it protect a trade-mark that tells an untruth. The defendants' mark tells the truth. The plaintiff's mark tells an untruth. The plaintiff thus "places itself beyond the pale of the protection of the law." Upton on Trade-marks, p. 30. Nor would the plaintiff's case be aided if the original Rogers brothers had ever attempted to confer upon the plaintiff the right to thus hold themselves out to the public. "The privilege of deceiving the public, even for their own benefit, is not a legitimate subject of commerce." *Partridge* v. *Menck*, 1 How. Court of App. Cases, 558, and Cox's Trade-mark Cases, 72. And since the *Leather Cloth Company Case*, 11 H. L. Cases, 523, this principle has been firmly imbedded in the law of trade-marks. It has received recent recognition by the Supreme Court of the United States in *Manhattan Medicine Co.* v. *Wood*, 108 U. S. Reps., 218.

STODDARD, J. As we understand the finding and rulings of the Superior Court, practically the only question left for the determination of this court is in respect to the plaintiff's exclusive right, as against these defendants, to stamp

the word "Rogers" upon silver-plated flat ware, such as knives, forks, spoons, etc. In considering this subject it must constantly be borne in mind that all questions of fact are finally disposed of by the Superior Court, and that this court cannot, even by inference, supplement such finding, or supply omitted facts. Under our practice this court is controlled by the finding as it comes to us. The case stands upon an answer denying the material allegations of the complaint, and in so far as the Superior Court omitted to find true the allegations and claims of the plaintiff, those allegations and claims must be regarded as not proved.

The defendants stamped upon the shanks of spoons and forks manufactured by them the combination of words "C. Rogers & Bros. A1." The plaintiffs' stamp is " * Rogers & Bro. A1." The finding states in detail the use by several different partnerships or corporations of stamps all bearing the common and distinctive word "Rogers," and differing from each other in all other material respects except in the use of this common and conspicuous word "Rogers," one concern using a stamp with the word "Rogers" alone. The finding then proceeds: "By reason of the numerous stamps on spoons, forks and knives, containing the word 'Rogers,' as before mentioned, and of the efforts of the various concerns who have used such stamps since 1847 to promote the sale of their goods as 'Rogers goods,' the word 'Rogers' has become the conspicuous and familiar part of such stamps with a large class of retail buyers; and while jobbers and dealers, and those retail buyers who are informed of the facts, readily distinguish between the stamps of the different manufactories by the word or symbols which such stamps do not possess in common, those retail buyers of the articles who buy by the stamps or the single article look only to the word 'Rogers,' and are for this reason liable to confound the various stamps; but generally the retail buyers who desire any information on the subject of the make of the goods, rely upon the dealer for such information."

It appears from the extract that there are two governing

facts:—1st, that the word "Rogers" is the conspicuous, familiar, material and valuable thing in the various so-called trade-marks; 2d, that the stamp of the defendants is liable to be mistaken for that of the plaintiffs because of the use of the word "Rogers," and by that limited class alone who look only to the word "Rogers." And again the case states:—"Between the stamps so used by the defendants and the stamps used by the plaintiffs upon similar articles manufactured by them respectively, the dealers and jobbers in such articles have no difficulty in distinguishing. And this is also true of those retail buyers who look beyond the word 'Rogers.' But those who regard the word 'Rogers' only would be liable to confound one with the other, as is the case of the various 'Rogers' stamps before mentioned. Retail buyers sufficiently acquainted with the various 'Rogers' stamps in the market to distinguish between the same would have no difficulty in distinguishing between the two stamps of the plaintiffs and defendants; but the general resemblance between the two stamps is such that a person knowing that of the plaintiffs and not knowing that of the defendants might, upon referring to it, but not reading it attentively, mistake it for that of the plaintiffs." Thus, with reiteration the court below emphasizes the fact that the word "Rogers" is the controlling word—the one thing that is the basis of all possible confusion or mistake in the use of the two stamps.

There is no finding nor suggestion of fact that any other part of the defendants' stamp is answerable in any degree for that liability to mistake. If any other part of the stamp, in configuration, collocation, or combination of words, figures or symbols, or in other respect, contributed in any manner to deceive possible purchasers and enable the defendants to sell their goods as those of the plaintiffs, it should so have been found by the trial court. This court cannot find such facts from an inspection of the stamp itself. This is not a case where this court can pronounce as matter of law that the defendants' stamp in other particulars so resembles that of the plaintiffs as to amount to a represen-

tation that the goods are the plaintiffs' goods. In this particular the case at bar differs from many of the cases cited in the briefs of counsel. In some of the English cases relied upon, and in other instances, the court determined from the evidence in the particular case whether the stamp was of objectionable character, thus exercising a combined jurisdiction over fact and law. In our courts, as before stated, these jurisdictions are separated, the fact being committed to the Superior Court, and the law to this court.

It is said that this stamp, " C. Rogers & Bros. A1," is " stamped upon the backs of the shanks of the spoons and forks in the same manner and place as the plaintiffs' goods are and have been stamped." This is undoubtedly an evidential fact, from which the trial court might, in connection with other circumstances, have found a liability to deceive, on account of the location and peculiar characteristic of the defendants' stamps, but the court has not so found; presumptively the evidence did not warrant that conclusion; and, on the contrary, the court repeatedly tells us that the word " Rogers " alone is the only possible misleading character. And further, we are informed that " the method of stamping their name upon such articles manufactured by them, and the locality of the stamp upon the article, has been that commonly employed by manufacturers of such silver-plated articles for many years. The mark ' A1 ' has been frequently used by manufacturers of such ware for many years as a mark of quality, and is so regarded in the trade." Manifestly upon this condition of facts, in the absence of a finding that the location of the stamp, combining with its form, might have a misleading effect, we cannot say as matter of law that it does have that possible effect, particularly in view of this finding, that the location of the stamp is common to the trade, and the addition of the marks of quality, " A1," is commonly used by manufacturers as a quality mark. We feel constrained by the facts in the case to say that there is no foundation laid for the claim that we should rule as matter of law that the judgment of the Superior Court is erroneous, so far as that

judgment relates to the stamp in question in other respects than the use of the word "Rogers."

This appeal raises the question of error or no error upon the facts found, and " when, therefore, on such appeal, the record omits to present facts essential to the case of the appellant, this court can simply affirm the judgment, and cannot remand the case to the lower court for amendment, or a further hearing or finding." *Schlesinger* v. *Chapman*, 52 Conn., 273.

Have these plaintiffs, as against these defendants, an exclusive right to the use, in their stamp, of the word "Rogers"? Upon this branch of the case there is one further fact stated as follows: " The purpose of the defendants in stamping their firm name upon the spoons, forks and knives so manufactured by them, has been to indicate to the public that they are the manufacturers of the goods so stamped. But the defendants, in commencing the manufacture of such articles, had in view the popularity in the market of such goods bearing a stamp containing the word 'Rogers,' and an inducement to commencing such manufacture was the advantage they might derive from having their goods so stamped." And then the court finds: " The allegations of fraudulent design and acts on their [the defendants'] part, contained in articles 11, 12, 13, 14, 15 and 16 of the complaint, are found to be not true." The 11th article contains an allegation that the defendants, " with intent to defraud " the plaintiffs, sent their goods into the market with marks closely resembling the claimed trade-marks of the plaintiff. By article 12 it is stated that by the external shape and appearance of the goods, together with the stamp and mode of selling, the defendants caused their goods to resemble the plaintiffs'. Article 13 contains an allegation that the defendants' stamp is a close imitation of the plaintiffs', and is an infringement of their trade-mark, and is well calculated to mislead and deceive, and does deceive purchasers, and induces them to buy the defendants' goods supposing them to be of the plaintiffs' manufacture. Article 14 alleges that the defendants' goods will become known

as "Rogers" goods, and that thereby purchasers will be led to buy the defendants' goods believing them to be the plaintiffs'; and by article 15 it is alleged that the defendants fraudulently stamp the word "Rogers" on their goods, intending it to operate as a fraud upon the public, upon unwary purchasers, and upon the plaintiffs, in the ways above set forth, *etc.*   So far the trial court has wholly negated the claim of the plaintiffs that the defendants were actually fraudulent in the use of their stamp, and that such stamp was intentionally used to personate the plaintiffs' goods, notwithstanding the finding that the defendants had in view the popularity of goods marked "Rogers," and that one inducement was the advantage they might derive from so stamping their goods.   But in saying that the allegations of fraudulent design and acts on their part, contained in article 16 of the complaint, are found to be not true, the trial court goes further than to deny the assertion of active, personal, intentional, fraudulent design and counterfeiting, and negatives the constructive fraudulent design implied in the statement contained in that article.

Article 16 is as follows:—" That by reason of the facts aforesaid the use of the word 'Rogers,' either as the whole or a part of their stamp upon spoons, forks and knives, must and will, under the fixed circumstances inevitably connected with such use, necessarily infringe upon the plaintiffs' lawful enjoyment of the use and benefit of their trademarks aforesaid, and must and will induce and cause unwary purchasers and others to purchase the spoons, forks and knives of the defendants, stamped with the word 'Rogers,' either as the whole or as a part of their stamp, in place of, and supposing them to be, spoons, forks and knives manufactured by the plaintiffs, to the great injury of the plaintiffs and in fraud of their rights."   In this article there is no statement of active fraud, or intentionally misrepresenting the defendants' goods to be those of the plaintiffs, but only a statement that inevitably any use, no matter how honest and customary, of the word "Rogers" in the stamp, will induce and cause unwary purchasers to purchase goods

of the defendants' make, supposing them to be the plaintiffs', and therefore any use of the word "Rogers" in such stamp by the defendants is thus constructively fraudulent. This conclusion and assertion of the plaintiffs, so stated, is denied by the trial court. The plaintiffs' case is stripped, by the finding, of every fact collateral or additional to the mere use of the word "Rogers" in the stamp.

The plaintiffs' claim, as thus stated, is surely not warranted by any decided case or the authority of any test-writer brought to our attention. Substantially all the leading and governing facts and characteristics of the recent English case of *Massam* v. *Thorley's Cattle Food Co.*, L. R., 14 Ch. Div., 748, a case that is largely relied upon by the plaintiffs, are eliminated from the plaintiffs' case. A few citations from the several opinions in that case will indicate how fundamentally different it was from the case with which we are dealing. And it should be borne in mind that this English court was considering questions of fact upon the evidence in the case. Page 755: "'*Thorley's Food for Cattle*' meant that food which for many years was manufactured at works belonging to Joseph Thorley, and afterwards was manufactured by his executors carrying on his business at the same works." Page 456: "We have heard nothing like a satisfactory explanation of how J. W. Thorley's company came into existence, unless it was that the promoters thought that Thorley's food was a very profitable thing, and had got a great reputation, and that they should like to steal the reputation which it had acquired. In order to do that they somehow or other got into communication with a brother of the late Joseph Thorley, who for some years had been in the service of Joseph Thorley, and during those years, according to his own account, which I take to be true, had acquired a knowledge of the recipe and of the manufacture, but who, for several years previous to the existence of this company, had never had anything to do with the manufacture of food for cattle. Having the name of Thorley, which was the distinguishing mark of the food for cattle, he either tendered himself for sale, or was found for pur-

chase by some persons, in order that his name might be got into a joint stock company formed for the sake of selling these goods. Why was that name got in there except for the purpose of inducing the world to believe that it was the same concern, or that it was the same Thorley, or a continuation of the same Thorley, whose name was the principal characteristic of the name of the article? The name of the company is, to my mind, a fiction. The meaning which the name of ' J. W. Thorley & Co., Limited' would convey to any person's mind, is that there had been a partnership of J. W. Thorley & Co., a real partnership, which had been carrying on business in the manufacture of this food for cattle, and that for some reason or other, such as we have seen constantly in our experience in this court, the partnership had been minded to convert itself into a limited company for the more convenient transaction of its business. . . . . . I am, therefore, of opinion that in this case what the defendant company have done has been calculated to deceive, and I am bound to say, in my judgment, I have no doubt was from the first intended to deceive the persons purchasing their article into the belief that they were purchasing the article which Joseph Thorley had formerly manufactured at the works which had attained the great reputation which Thorley's manufacture appears to have obtained." BAGGALLAY, L. J., said :—" I do not profess to say now whether J. W. Thorley, if honestly carrying on business on his own account in the manufacture and sale of this article, might not call it ' Thorley's Food for Cattle,' provided he took proper precautions to prevent it being supposed that the article he was so manufacturing was manufactured by the representatives of Joseph Thorley, but I feel satisfied that the company has no right whatever to use that name. I am strongly inclined to the opinion, though it is unnecessary to decide, that according to the view of Lord WESTBURY in the Glenfield Starch case, the expression ' Thorley's Food for Cattle' indicates the trade denomination of the article manufactured by the particular person, but even on the assumption that the defendant company

had not only the right to manufacture this article but to call it 'Thorley's Food for Cattle,' I have come to the conclusion on the evidence that they adopted such a mode of endeavoring to push that article in the market as to induce many persons to entertain the reasonable belief that the article they were so putting upon the market had been manufactured by the representatives of Joseph Thorley." BRAMWELL, L. J., said :—" The complaint of the plaintiffs is not that the defendants made and sold the same article that the plaintiffs make, but that it was sold in such a way as to induce purchasers to believe that it was the article manufactured by the establishment which was Joseph Thorley's, and now is carried on by his executors. The learned counsel for the defendants admit that, if that is so, there is a cause of action against them, and that they must be restrained from doing it. The question, therefore, is one of fact—was the trade so carried on by the defendants as to give rise to that belief? It appears to me almost impossible to entertain a doubt upon that question." JAMES, L. J., finally announced that an injunction would issue, and Mr. Glasse, who was of counsel, said :—" But is it not the substance of your Lordship's judgment that they are not to use the word Thorley in connection with their cattle food?" JAMES, L. J.:—" We cannot prohibit their using the name if they use it in a way not calculated to mislead the public."

Quotations are made at such length from this case because of the importance apparently attached to it by the plaintiffs. It will be seen that the case was regarded as one where a joint stock company had assumed the name of "Thorley" with the preconceived design of inducing the public to believe that their manufacture was that of the plaintiffs, with the intent to pirate the marks of origin of the plaintiffs' goods. In this view the English case goes no further than this court in *Holmes, Booth & Haydens* v. *Holmes, Booth & Atwood Manf. Co.*, 37 Conn., 278. Further, as indicated by their opinions, the judges strongly leaned to the position that "Thorley's Food for Cattle" had, under the evidence in the case, come to indicate the

trade denomination of the article manufactured by the particular person, and had obtained that secondary meaning wholly apart from its ordinary and apparent meaning, assimilating it, in this particular, to the "Glenfield Starch" case in *Wotherspoon* v. *Currie*, L. R., 5 H. L. Cas., 508. Lastly, the English case, as the final and determinate view of the case, was treated as a case of intentional false representation by the defendants, in their method of advertisement by labels, and method of packing goods and carrying on their business. This is shown by the refusal of the court to enjoin the use of the word "Thorley" absolutely in the cattle food business, and permitting its use so long as that use was not calculated to mislead. The *rationale* of the decision of *Massam* v. *Thorley's Cattle Food Co.* is that it was a case of actual intentional misrepresentation. The scope and limit of the ruling in that case, in regard to the use of the name "Thorley," is fixed by the decision of the same court in *Thorley's Cattle Food Co.* v. *Massam*, in which the court protected by injunction the "Thorley's Cattle Food Company" in the prosecution of its business in that name against circulars and advertisements of the defendants, the executors of Joseph Thorley. Both JAMES and BAGGALLAY, L. Js., in the latter case, refer approvingly, and as containing the gist of the law, to the language of Lord Justice TURNER in *Burgess* v. *Burgess*, 3 DeGex, M. & G., 896, as follows:—"No man can have any right to represent his goods as the goods of another person; but in applications of this kind it must be made out that the defendant is selling his own goods as the goods of another. When a person is selling goods under a particular name, and another person, *not having that name*, is using it, it may be presumed that he so uses it to represent the goods sold by himself as the goods of the person whose name he uses. But when the defendant sells goods under his own name, and it happens that the plaintiff has the same name, it does not follow that the defendant is selling his goods as the goods of the plaintiff. It is a question of evidence in each case, whether there is false representation or not."

Considered in the ordinary course of trade, it is a contradiction of terms to say that a man selling goods under his own name sells them as the goods of another, even if that other have the same name. The cases seem to require some element of false representation other than that implied in the fair, honest and ordinary use of a person's own name.

An examination of the following and kindred cases wherein the use of a person's name has been regulated, will show that in most instances conscious, intentional fraudulent misrepresentation on the part of the defendant had been resorted to; in others, there was such a combined use of the name with other marks, characters, figures, or form and arrangement of circulars, advertisements, etc., as to amount to a false representation, and the combination only was enjoined. No instance can be found where the use of the name only, in good faith, has been stopped. See *Croft* v. *Day*, 7 Beavan, 84; *Holloway* v. *Holloway*, 13 Beavan, 213; *Clark* v. *Clark*, 25 Barb., 78; *Sykes* v. *Sykes*, 3 Barn. & Cress., 541; *Metzler* v. *Wood*, L. R., 8 Ch. Div., 608, 610; *Fullwood* v. *Fullwood*, L. R., 9 Ch. Div., 179; *Devlin* v. *Devlin*, 69 N. York, 214; *Landreth* v. *Landreth*, 22 Fed. Rep., 41; *Shaver* v. *Shaver*, 54 Iowa, 213; *Stonebraker* v. *Stonebraker*, 33 Md., 268; *Williams* v. *Brooks*, 50 Conn., 278; *Meriden Britannia Co.* v. *Parker*, 39 Conn., 450.

Upon the other hand there has been, from the first to the present time, a general consensus of judicial opinion that the use of a personal name in a fair, honest and ordinary business manner, could not be prevented, even if damage resulted therefrom. *Croft* v. *Day*, 7 Beavan, 84; *Holloway* v. *Holloway*, 13 id., 213; *Burgess* v. *Burgess*, 3 De Gex, M. & G., 896; *Faber* v. *Faber*, 49 Barb., 357; *Clark* v. *Clark*, 25 id., 80; *Meneeley* v. *Meneeley*, 62 N. York, 427; *Comstock* v. *Moore*, 18 How. Pr., 424; *Gilman* v. *Hunnewell*, 122 Mass., 139; *McLean* v. *Fleming*, 96 U. S. Reps., 252; *Carmichel* v. *Latimer*, 11 R. Isl., 395; *Landreth* v. *Landreth*, 22 Fed. Rep., 41; *Singer Manf. Co.* v. *Long*, L. R., 18 Ch. Div., 412. Other cases and *dicta* might be cited; but it is deemed unnecessary.

Rogers & Brother *v.* Rogers.

In one brief filed for the plaintiffs it is said that they make no exclusive claim to the word " Rogers ; " but there is coupled with that disclaimer a statement that the word " Rogers " is the conspicuous and valuable part of their mark, and that any use of it by the defendants, in the ordinary way of manufacturers, by stamping their goods with it, either alone or in any combination, will indubitably produce results which they are now striving to prevent; and in another brief filed by other counsel of the plaintiffs the broad claim is made that the word " Rogers " used as a stamp should be stopped. And, as we have before said, this is the only contention left to the plaintiffs by the finding of the court below.

In conclusion, we think there is neither authority nor reason in support of the doctrine that the fair, honest use of a name can be enjoined when it is used in the ordinary course of business, in the way and manner in which other manufacturers of similar goods are accustomed to use their own name in the preparation for sale, or sale, of goods ; that such a rule would operate in restraint of trade, and prohibit a person from using the ordinary means that all are entitled to use in the prosecution of business enterprises ; that such use contains no element of false representation or personation in any just and true sense, and that, while it may be true that a possibility exists that the goods of one will be purchased to some extent by persons who either know no distinction, or even by the occasional few who suppose them to be the goods of another, this condition of things is inevitable in trade and commerce, inhering in the nature of things, and attaches in kind, if not in degree, in all cases where a manufacturer sends goods of any particular description, but without distinguishing mark, into a district or country where such goods were before that time unknown, and establishing a reputation in that district or country as the manufacturer and vendor of such goods. Any new comer in the same district with similar goods would undoubtedly profit by the reputation of the former's goods ; yet the benefit to the public generally of free com-

petition, and the natural rights of all to seek any and all markets, would render ineffectual all attempts to shut out such new comer.

Since the preparation of the foregoing opinion the second edition of " Browne on Trade-Marks " has been distributed. That author, upon a review of the cases, lays down this proposition :—" A manufacturer has a right to affix his own name to an article of his own production. And any injury which another manufacturer, having the same surname, may suffer in consequence thereof, is *damnum absque injuriâ*." Sec. 420. And in his commentary upon *Howe* v. *Howe Machine Co.*, 50 Barb., 236, he says :—" This case is apt to mislead the superficial observer, and even for a moment stagger the preconceived notions of one used to critical examination. It has been cited more than once in support of this absurd proposition, to wit: that when two men in the same trade have the same surname, one may employ that surname as a trade-mark, to the exclusion of any such right by the other; that is, when two brothers have made and sold sewing machines, the one who first stamped his surname upon a machine was the sole possessor of the right to stamp his workmanship with his true name. This conclusion has no warrant from any authoritative source." Sec. 423.

There is no error in the judgment of the Superior Court.

In this opinion CARPENTER and GRANGER, Js., concurred.

LOOMIS, J. The able argument in support of the majority opinion is so well calculated to produce the impression that the finding of the Superior Court leaves no possible basis for granting any relief to the plaintiff, that it will be necessary to examine the pleadings and finding somewhat carefully, to show the grounds for my dissent. If we exclude from paragraphs eleven to sixteen of the complaint all allegations of fraudulent designs and acts, there will remain the averments that the plaintiff is a corporation duly

organized under the laws of this state, and that since 1859
it has been and now is extensively engaged in the manu-
facture of silver-plated spoons, forks and knives, and has
large capital invested in that business; that in 1858 Asa H.
and Simeon S. Rogers formed a partnership under the name
of " Rogers & Brother," and engaged in the business of
manufacturing and selling silver.plated spoons and forks
and knives, which was continued till December 18th, 1859,
when the plaintiff corporation was organized and purchased
the property, and succeeded to the business and all the rights
of the partnership, that said partnership had adopted and
used in its business the trade-mark " * Rogers & Bro.," some-
times adding the suffix " A 1 "—stamping it upon the goods
manufactured by said firm, and that the plaintiff upon suc-
ceeding to the business of said partnership, lawfully contin-
ued to use, and has ever since lawfully used, and intends in
the future to use in its business said trade-mark with said
suffix, stamping the same upon the spoons, forks and knives
manufactured by it; that the sale of the plaintiff's goods
so stamped has been widely extended, and that owing
to the skill and integrity of the plaintiff in their manufac-
ture they have constantly maintained a special, peculiar,
good and valuable reputation among the trade and among
purchasers generally, and that the business of the plaintiff
has been largely built up and extended by such reputation,
and is now largely dependent for its profitable continuance
upon the reputation so attached to its goods by the use of
such stamp thereon; that said trade-mark is of great value
to the plaintiff and will continue to be so if the wrongful
acts of the defendants shall be stopped; that the defen-
dants, well knowing the premises, and knowing that if they
could send spoons, forks and knives into market bearing a
stamp that would cause them to be called " Rogers goods"
or by any of the names whereof the word " Rogers " is
the specially conspicuous part, they could sell them much
more readily and for a higher price than if the stamp did
not contain the word " Rogers; " and intending to cause
their goods to be called by some name of which the word

"Rogers" forms the conspicuous part and so obtain advantage of the reputation which attaches to goods bearing the plaintiff's trade-mark "* Rogers & Bro. A 1," did, on or about the 15th day of June, 1883, begin the business of making and selling silver-plated spoons, forks and knives, and stamping upon them marks resembling said trade-marks of the plaintiff, and in particular the following, to wit: " C. Rogers & Bros. A 1," and to send into the market and sell spoons, forks and knives so stamped, and have ever since continued so to do; that by reason of said facts the use by the defendants of the word "Rogers" as a stamp upon spoons, forks and knives will cause unwary purchasers to purchase the goods of the defendants so stamped, supposing them to be manufactured by the plaintiff, to the injury of the plaintiff; and that the plaintiff, on August 1st, 1883, requested the defendants to cease using the stamp aforesaid, but they then refused and still refuse.

Of the material allegations stated above the defendants admit that in 1858 Asa H. and Simeon S. Rogers formed a partnership under the name of "Rogers & Brother," and under that name engaged in the manufacture of silver-plated ware; that in 1859 the plaintiff corporation was organized under the name of "Rogers & Brother," purchased the property of the copartnership and succeeded to its business and has ever since been engaged in the manufacture of silver-plated spoons, forks and knives, and has a large amount of capital engaged in the business; and that the partnership "Rogers & Brother" during its existence stamped the goods of its manufacture with the name of said copartnership, either in full or in the abbreviated form of "Rogers & Bro.," and that the plaintiff corporation has, since it engaged in the business, stamped the goods of its manufacture with its corporate name, either in full or abbreviated, and that said copartnership and corporation sometimes added to their mark "A 1." They also admit the use of the star, and that the plaintiff's goods while so stamped have had a good and valuable reputation in the public markets.

The defendants aver that they have been extensively

engaged in business as manufacturers and sellers under their partnership name of "C. Rogers & Bros." since 1866; their manufacture being principally that of silver-plated coffin trimmings; and that in that business their partnership name has acquired a high reputation and been of great value to them. And in reply to paragraphs eleven to sixteen of the complaint, they aver that they have been engaged in and are intending to carry on, in connection with their other silver-plated manufacture, the manufacture and sale of electro-silver-plated spoons, forks and knives, and have made a large investment therein, and that they have stamped upon the articles so manufactured their partnership name for the sole purpose of indicating that such articles are manufactured by them, and of availing themselves of the reputation which they (the defendants) have acquired in the public markets as before-mentioned.

This the defendants insist that they have a lawful right to do, and that the doing thereof can afford no lawful ground of complaint to the plaintiff.

The court finds (among other things) that when the plaintiff corporation was formed in 1859, both members of the partnership formed in 1858 (Asa H. and Simeon S. Rogers) were associates in such formation, and became stockholders and officers in such corporation, and that the corporation so formed " acquired by purchase all the property and business of said firm, including its said stamp and good will, and has ever since used said stamp in its business, always stamping the same upon the back of the shank of the forks and spoons, and that the use of said stamp was never objected to by any of said brothers; that the goods made by the plaintiff, and stamped as aforesaid, have always been equal to or better than the goods made by said three Rogers brothers, and have always had a high reputation in the market; that the standard of quality has not only been maintained, but the amount of silver put upon the goods has been increased from time to time, and the quantity of silver now used by the plaintiff is twenty-five per cent. in excess of that used by Rogers Brothers; that the plaintiff has also from time

to time made improvements in the style and workmanship of the goods and has greatly improved the quality of its spoons by thickening the shanks; that the reputation of the plaintiff's goods is very much higher than was that of the goods made by said partnership; and that the plaintiff's knives, forks and spoons are of a quality much superior to those made by said partnership or by any other party prior to the organization of the plaintiff; that said stamp of the plaintiff has never been used except upon first quality goods, and the use of the same has been and is of great value to the plaintiff; that prior to the acts complained of the spoons knives and forks dealt in by the defendants were wholly of the manufacture of other parties than themselves, except as they were at one time connected with Chas. Parker, under an arrangement which appears in the case of *Meriden Britannia Company* v. *Parker*, 39 Conn. Reps., 450; that the defendants have never stamped any of their goods with any mark, name or trade-mark except as the spoons, forks and knives made by them recently have been stamped as herein stated; and that their stamp " C. Rogers & Bros. A 1 " is stamped upon the backs of the spoons and forks in the same manner and place as the plaintiff's goods are and have been stamped.

The majority of the court, in their opinion, after referring to various uses of the name " Rogers " by one or other of the brothers, most of which have been abandoned for many years and which do not seem to have any material bearing upon any question in this case, say :—" Thus with reiteration the court below emphasizes the fact that the word ' Rogers ' is the controlling word, the one thing that is the basis of all possible confusion or mistake in the use of the two stamps.  *  *  *  There is no finding or suggestion of fact that any other part of the defendants' stamp is answerable in any degree for that liability to mistake. * * * If any other part of the stamp, in configuration, collocation, or combination of words, figures or symbols, or in any other respect, contributed in any manner to deceive possible purchasers and enable the defendants to sell their

goods as those of the plaintiff, it should so have been found by the trial court."

To this construction of the finding, that confines the resemblance between the stamps entirely to the word "Rogers," excluding every other possible misleading similarity, I do not assent, because it entirely ignores the distinct finding that " the general resemblance between the stamps is such that a person knowing that of the plaintiff and not knowing that of the defendants might, upon referring to it, but not reading it attentively, mistake it for that of the plaintiff." This finding, and the construction I give it, are both emphasized by the fact that the trial court made the exhibits a part of the finding to be submitted for inspection and comparison by the judges of this court, surely not for the futile and foolish purpose of enabling us to see that the word "Rogers" in one stamp was like the word "Rogers" in the other, but that we might see how striking was the resemblance between the two stamps in their entirety, "*Rogers & Bro. A 1," and " C. Rogers & Bros. A 1," as actually impressed upon the metal in characters identical in style, size and space occupied,—making the closeness of the resemblance and the probable effect in misleading purchasers more apparent than would appear from any mere verbal description.

In order to illustrate the use and benefit of exhibits in questions of this kind, it may be allowable to compare the impression actually made by the star prefix of the plaintiff's stamp with the " C." of the defendants' stamp. As they appear on the printed page, nothing could well be more dissimilar, and yet such is not the fact as seen in the exhibits, for both consist of very small circular indentations in the metal, and owing to the small size the distinguishing points are obscure, so that as addressed to the eye upon casual or ordinary examination there is great similarity, even where we would not expect to find it.

But it is not my purpose to supplement the finding by adding my own inferences of fact. The exhibits, however,

being legitimately before us as a part of the case, it was our duty to examine them.

For the purposes of this discussion, however, I have no occasion to use the exhibits for any other purpose than to aid the interpretation and to make more clear the purpose and meaning of that part of the finding, which in a measure seems to have escaped the attention of the majority of the court, notwithstanding the great thoroughness and ability of their argument. That the plaintiff has a good and very valuable trade-mark is beyond all question. As a property right it is as sacred as any other. The stamp adopted by the defendants to some extent operates to personate the plaintiff's and to mislead at least incautious and unwary purchasers. So that profits of right belonging to the plaintiff may fall into the hands of the defendants to whom they do not belong. For such a state of things there ought to be a remedy, and I think there is one founded upon the authority of numerous decisions, some of which were referred to by this court, with approval, in the late cases of *Williams* v. *Brooks*, 50 Conn., 278, and *Meriden Britannia Co.* v. *Parker*, 39 Conn., 450.

In *Williams* v. *Brooks* this court, remarking upon the finding that those liable to be deceived " were only careless and unwary purchasers," says (p. 283:)—" The purpose to be effected by this proceeding is not primarily to protect the consumer but to secure to the plaintiffs the profit to be derived from the sale of hair-pins of their manufacture to all who desire and intend to purchase them. It is a matter of common knowledge that many persons are in a greater or less degree careless and unwary in the matter of purchasing articles for their own use; but their patronage is not for that reason less profitable to the manufacturer; and when such persons have knowledge of the good qualities of the plaintiffs' hair-pins, and desire to purchase them, the law will not permit the defendants to mislead them." The court then quotes the following from the opinion of the court in *Singer* v. *Wilson*, L. R., 3 App. Cases, 376:—
" There are multitudes who are ignorant and unwary, and

they should be regarded in considering the interests of traders who may be injured by their mistakes. If one man will use a name the use of which has been validly appropriated by another, he ought to use it under such circumstances and with such sufficient precaution that the reasonable probability of error should be avoided, notwithstanding the want of care and caution which is so commonly exhibited in the course of human affairs."

In *Meriden Britannia Co.* v. *Parker* it was found " that the stamp of the defendant, 'C. Rogers & Bros. A 1,' resembled the petitioners' trade-mark '1847 Rogers Bros. A 1,' to that degree that it was calculated to deceive unwary purchasers and those who buy such goods hastily and with but little examination of the trade-mark; but purchasers who read the entire trade-mark on the respondent's goods and who know the petitioners' trade-mark cannot be deceived, nor can they mistake the respondent's goods for those of the petitioners." 39 Conn. 455.

Upon the finding in that case the court remarked that " the fact that careful buyers, who scrutinize trade-marks closely, are not deceived, does not materially affect the question. It only shows that the injury is less, not that there is no injury." Id. 460.

But if the resemblance be found sufficient to mislead, as in the Parker case, it is still contended that as the defendants here only use their own partnership name, they may, upon the pleadings and finding in this case, lawfully appropriate to themselves the entire advantage which, in that case, was to be divided between themselves and Parker, and that this plaintiff must continue to suffer, without relief, all the damage from which the plaintiffs in that case were protected by injunction.

But in deciding this question of infringement the only difference between the case of one who uses a name, not his own, as a stamp, and one who uses his own name, is that, in favor of the owner of the stamp claimed to have been imitated and infringed, the former is presumed to

use it for a fraudulent purpose, while, as to the latter, such purpose must be proved.

Here it is found that " the defendants, in commencing the manufacture of such articles, had in view the popularity in the market of such goods bearing a stamp containing the word Rogers, and one inducement to commencing such manufacture was the advantage they might derive from having their goods so stamped."

This is clearly sufficient for the plaintiff, unless the fact that such "popularity" was not the sole property of the plaintiff prevents the maintenance of this suit without joinder as co-plaintiffs of the other parties interested in the reputation and popularity which the defendants intended to appropriate.

That question arose in the case of *The William Rogers Manufacturing Co. v. The Rogers & Spurr Manufacturing Co.*, and was then disposed of by Judge LOWELL as follows : " It is further argued that the Rogerses are so many that the court cannot find any intent to appropriate the reputation of one of them more than another, and that if any suit will lie it must be by all those who use any trade-mark whose distinctive feature is the name ' Rogers.' I believe it to be true that the Greenfield Rogerses did not inquire, nor did the defendants care, whose reputation they were making available ; but I am of opinion that any one of those who rightly use the name may enjoin the interfering use by others." 11 Fed. Reporter, 500.

That the plaintiff has built up the reputation and established the popularity in the markets of goods stamped with a stamp the conspicuous word of which is " Rogers," and is a principal, if not the sole owner of such reputation, is alleged and clearly found ; also, that the defendants intended to appropriate the advantage to be derived from securing such reputation for their goods to their profit, and that this was an inducement to their commencing the business.

As was said by BAGGALLAY, L. J., in the *Thorley Cattle Food Case*, " I am satisfied on the whole transaction (as

set forth in the finding) that the object was to obtain a large slice of the business previously ca_ried on by the plaintiffs." L. R., 14 Ch. Div., 748.

But in our reasoning we are confronted with the proposition that, notwithstanding the positive findings of the court to which we have referred, the case of the plaintiffs, as set forth in the complaint, is so met and controlled by the negations in the finding as to prevent the plaintiff from obtaining any relief. The pleadings are reviewed somewhat briefly in the majority opinion, and the claim is made that the trial court has wholly negatived the allegations that the defendants were actually and intentionally fraudulent in the use of their stamp, and that in saying that the allegations of fraudulent design contained in article sixteen of the complaint are found not true, goes further, and negatives also the constructive fraudulent design implied in that article. But upon careful examination, the finding, when applied to the pleadings (the substance of which we have given) brings me to a different result.

The principal contention between the parties in their pleadings grows out of the allegations of positive fraudulent acts, or of constructive fraud, necessarily resulting from the acts set forth in paragraphs eleven to sixteen inclusive of the complaint. The defendants (without in terms denying the fraudulent intent and acts charged) aver that, as to those paragraphs, they have been engaged in, and are intending to carry on, the manufacture and sale, as set forth, "for the sole purpose of indicating that such articles are manufactured by them, and of availing themselves of the reputation which they (the defendants) have acquired in the markets, as before mentioned."

The affirmative allegations of the plaintiff are met by the affirmative counter and inconsistent averment of the defendants, thus creating an issue to be passed upon by the trier, who distinctly negatives the claim of the defendants by finding, in effect, that the " popularity which the defendants had in view," and from which they wished " to derive advantage," was not the " reputation which they

(the defendants) had acquired in the markets in their business." The defendants' previous business is expressly found not to have included the manufacture of silver-plated spoons, forks and knives, stamped with the name "Rogers." On the contrary, this was the business found to have been established by the plaintiff and others, under whom the defendants do not claim.

In dissenting from the views of the majority of the court I do not find it necessary to hold that the fair and honest use of a name can be enjoined when it is used in the ordinary course of business in the way and manner in which other manufacturers of similar goods are accustomed to use their own names in the preparation and sale of goods, for I do not regard this as such a case. It belongs rather to the class of cases referred to by Judge LOWELL in the case before cited (11 Fed. Reporter, 495), where he says: "The books are full of cases in which defendants have been restrained from using their own names in a way to appropriate the good-will of a business already established by others of that name."

I think there was error in the judgment complained of.

If any decree of injunction was to be passed I would prefer to give it more careful consideration before fixing its precise terms. I will merely add that my impression is that the defendants should have been enjoined from such use of the combination of words, "C. Rogers & Bros.," on silver-plated knives, spoons and forks, and from such use of the word "Rogers" as part of any stamp or mark on the shank of silver-plated spoons and forks in connection with or without the suffix "A 1," as that purchasers will be liable to believe that spoons, forks and knives, so marked and made by the defendants, were made by the plaintiff.

In this opinion PARK, C. J., concurred.