MERIDEN BRITANNIA COMPANY *vs*. CHARLES PARKER.

Three brothers, William, Asa H. and Simeon S. Rogers, were engaged for many years in the manufacture of plated spoons and forks, in which they had superior skill, sometimes as partners under the name of "Rogers Brothers" and sometimes as stockholders in joint stock corporations. The goods manufactured by such partnerships and corporations were stamped with various devices, each of which contained the name "Rogers". In 1862 all such partnerships and corporations, with one exception, had ceased to do business, and the three brothers entered into a contract with the petitioners, by which the latter agreed to manufacture such goods under their supervision. The goods so manufactured were stamped, "1847, Rogers Bros. A. 1.", which stamp differed somewhat from any stamp previously used : Held, that the petitioners acquired a lawful right to the use of such name as a part of their trade mark.

Courts of equity will not protect trade marks which deceive the public; but that deception need not be of such a character as to work a positive injury to purchasers, nor, on the other hand, will the mere fact that some wrong impression may be received by the public, be sufficient to destroy the validity of the trade mark. If the representation of the trade mark does not in fact mislead the public, and may be understood in any reasonable sense as substantially true, the trade mark will be entitled to protection.

It appearing in this case that the Rogers brothers superintended the petitioners' spoon and fork manufactory, directed as to the style and quality of such

goods, and had the general supervision of the manufacturing and sale thereof, it was held that the representation contained in the trade mark, that the Rogers brothers were the manufacturers, was true in a certain sense, to-wit: that the goods were the production of their skill, judgment and experience, and therefore the misrepresentation, if any, was not of such a character as to defeat the petitioners' claim to the exclusive use of the trade mark.

The petitioners furnished all the capital, power and machinery, employed and paid laborers, and controlled the sale and disposition of the goods manufactured. At the date of the petition it was understood by the trade generally that goods stamped with their trade mark were manufactured by the petitioners. Held that the petitioners were, in another sense, the manufacturers, and that the trade mark sufficiently indicated the origin and ownership of the goods.

The respondent acquired the right from other persons, named Rogers, to stamp that name on plated spoons and forks manufactured by him for himself and them. He stamped the goods so manufactured "C. Rogers Bros. A. 1." and "C. Rogers & Bros. A. 1." These stamps resembled the petitioners' trade mark to such an extent that they were calculated to deceive, and did in fact deceive, unwary purchasers, and the respondent sold large quantities of his own goods thus stamped, upon the reputation of the petitioners' goods, stamped with their trade mark. Held, that the respondent's trade marks were infringements of the petitioners' trade mark and that the petitioners were entitled to an injunction restraining their further use by the respondent.

The court declined however to prohibit absolutely the use of the name "Rogers", inasmuch as that name might be used in such a manner as not to constitute an infringement of the petitioners' trade mark.

The court also declined to prohibit absolutely the sale by the respondent of goods bearing the stamp in question, which were on hand at the time the petition was served, and also goods at that time in process of manufacture and which had been stamped, as such goods might be sold to purchasers who would not be misled by the stamps, and some injustice might be done to the respondent by such absolute prohibition.

BILL IN EQUITY for an injunction against the use of a trade mark; brought to the Superior Court in New Haven County. Facts reported by a committee and case reserved for advice. The facts of the case are sufficiently stated in the opinion of the court.*

* A full statement of the facts of this important case, with even a condensed statement of the very able and exhaustive arguments of the counsel, would fill more than a hundred pages. The Judge in his opinion presents however enough of the facts to enable the profession to understand the points of law decided, and the reporter regards it as his duty to do some possible injustice to the case rather than to devote to it so much space as a really full report of it would require. In the great multiplicity of law reports and in the large increase of cases before our own courts it is becoming more and more important to bring the report of every case within the smallest reasonable space.

*H. B. Harrison* and *O. H. Platt*, with whom was *Hicks*, for the petitioners, cited *Croft* v. *Day*, 7 Beav., 84; *Edelston* v. *Vick*, 23 Eng. Law & Eq. R., 51, 56, 57; *Rodgers* v. *Nowill*, 5 Mann. Grang. & Scott, 109; *Curtis* v. *Bryan*, 2 Daly, 312; *Walton* v. *Crowley*, 3 Blatchf., 440; *Dale* v. *Smithson*, 12 Abb. Pr. R., 237; *Dixon* v. *Guggenheim*, 3 Am. Law Times, 288; *Holmes, Booth & Haydens* v. *Holmes, Booth & Atwood Manuf. Co.*, 37 Conn., 278, 297; *Stewart* v. *Smithson*, 1 Hilton, 119; *Bradley* v. *Norton*, 33 Conn., 157; Kerr on Injunctions, 478, 481, 483; *Millington* v. *Fox*, 3 Mylne & Cr., 338; *Coffeen* v. *Brunton*, 4 McLean, 516; *Davis* v. *Kendall*, 2 R. Isl., 566; *Leather Cloth Co.* v. *Am. Leather Cloth Co.*, 1 Hem. & Mil. 271; *S. C.*, 29 Jur., 513; *Filley* v. *Fassett*, 17 Am. Law Reg., 402; *Boardman* v. *Meriden Britannia Co.*, 35 Conn., 402, 405; *Howe* v. *The Howe Machine Co.*, 50 Barb., 236; *Congress Spring Co.* v. *High Rock Spring Co.*, 57 id., 526; *Sykes* v. *Sykes*, 3 Barn. & Cress., 541; *Lockwood* v. *Bostwick*, 2 Daly, 521; *Rogers* v. *Taintor*, 97 Mass., 297; Upton on Trade Marks, 52, 53, 73, 79, 204, 207, and cases there cited.

*Ingersoll* and *Wright*, for the respondent, cited *Boardman* v. *Meriden Britannia Co.*, 35 Conn., 402; *Canal Co.* v. *Clark*, 13 Wall., 311; Cox's Trade Mark Cas., Appendix, 722; *Churton* v. *Douglass*, 23 Jur., 890; *Holmes, Booth & Haydens* v. *Holmes, Booth & Atwood Manf. Co.*, 37 Conn., 278; *Leather Cloth Co.* v. *Am. Leather Cloth Co.*, 29 Jur., 513; *Partridge* v. *Menck*, 2 Sandf. Ch., 622; *Samuel* v. *Berger*, 24 Barb., 163; *Palmer* v. *Harris*, 60 Penn. S. R., 156; *Pidding* v. *How*, 8 Simons, 477; *Hobbs* v. *Francais*, 19 How. Pr. R., 567; *Croft* v. *Day*, 7 Beav., 84; *Bradley* v. *Norton*, 33 Conn., 157; *Thompson* v. *Winchester*, 19 Pick., 214; *Burgess* v. *Burgess*, 17 Jur., 292; *S. C.*, 17 Eng. L. & Eq. R., 260; *Faber* v. *Faber*, 49 Barb., 357; Kerr on Injunctions, 480; Upton on Trade Marks, 9, 25, 26, 30, 47, 53, 66, 98, 99, 110.

CARPENTER, J.   The report of the committee contains an

elaborate statement of facts, many of which are immaterial in themselves, but important only as being evidential of other facts which are material; there is also a reference to a large mass of documentary evidence used on the trial, all of which is simply evidence tending to prove the material facts in controversy. In this connection we may add that many of the questions discussed in the able and exhaustive arguments to which we listened, are questions of fact. Of course it is not our province to decide such questions, and we shall not attempt to do so. We think, however, that the essential facts are sufficiently found. They may be stated in comparatively few words.

In 1847 three brothers, William, Asa H. and Simeon S. Rogers, commenced the business of manufacturing plated ware, especially plated spoons and forks. They continued in that business until 1862, either as partners under the name of " Rogers Brothers," or in connection with certain joint stock corporations, which they, or some of them, were instrumental in organizing; the principal of which were the " Rogers Brothers Manufacturing Company " and " Rogers, Smith & Company," of Hartford, and " Rogers & Brother " of Waterbury. The goods produced by them were of a superior quality, and acquired a good reputation in market. In 1862 they and said corporations, except the corporation of " Rogers & Brother " of Waterbury, had ceased to do business. On the 7th of November, 1862, they made a contract with the petitioners, by which, and by subsequent contracts, the petitioners acquired the right, which they now have, to manufacture and sell plated spoons and forks with the name " Rogers " stamped thereon as a component part of a trade mark. They also became entitled to have, and did in fact have, the benefit of the skill and experience of the three brothers in that department of their business. They adopted, and now use, as their trade mark, the words and figures, " 1847, Rogers Bros. A. 1. "; which differs somewhat from the trade marks previously used by the Rogers brothers, or the corporations organized by them. The petitioners have not only preserved the reputation which the Rogers goods

had in market, but they have materially improved and extended that reputation; so that, to some extent, they have a valuable interest in their trade mark, in addition to the interest, if any, originally acquired by contract. The Waterbury corporation still exists, and is doing a large business. They adopted as their trade marks, which are still in use, " Rogers & Brother, A. 1. " and " Rogers & Bro., A. 1." The petitioners now own a large majority of the stock in that corporation, and are themselves carrying on business, to some extent, in New Haven, in the name of " Rogers, Smith & Company," under the supervision of one George W. Smith. Since March 16th, 1868, all the business done in this line by the Rogers brothers, or any one of them, has been for, or in connection with, the petitioners.

It was understood by wholesale dealers generally that goods stamped with the petitioners' trade mark were manufactured by the petitioners, under the superintendence of the Rogers brothers, while consumers generally understood that the Rogers brothers were themselves the manufacturers. Such understanding on the part of the consumers was induced in part by the trade mark, and in part by circulars, bill-heads, correspondence, etc. The petitioners adopted and used the trade mark by the consent of the Rogers brothers, and no person or corporation has ever questioned their right so to do.

In November, 1866, three brothers of another family, Cephas B. Rogers, Gilbert Rogers, and Wilbur F. Rogers, who were then engaged in manufacturing coffin trimmings under the partnership name of " C. Rogers & Brothers," made an arrangement with the respondent, whereby he agreed to manufacture for them plated spoons and forks, stamped " C. Rogers & Bros.," or " C. Rogers Bros. A. 1." The petitioners did not consent to the use of these stamps. In March, 1871, by a further arrangement between the same parties, the respondent was authorized also to manufacture plated spoons and forks on his own account, bearing the stamp " C. Rogers & Brothers," or " C. Rogers' Brothers." The goods manufactured under this arrangement were in fact stamped, " C. Rogers' Bros. A. 1. " until about the first of

February, 1872, since which time they have been stamped "C. Rogers & Bros., A. 1." These stamps, as the committee expressly finds, "resemble the petitioners' trade mark, '1847, Rogers Bros. A. 1.', to that degree that that they are calculated to deceive, and do deceive, unwary purchasers, and those who buy such goods hastily, and with but little examination of the trade mark; and induce such traders to believe, and they do believe, that the spoons and forks sold by the respondent, bearing such stamps, are manufactured by the same parties that manufacture spoons and forks bearing the stamps, '1847, Rogers Bros. A. 1.'; but purchasers who read the entire trade mark on the respondent's goods, and who know the petitioners' trade mark, cannot be deceived, nor can they mistake the respondent's goods for those of the petitioners." * * * "Large quantities of the respondent's spoons and forks have been sold by him upon the reputation of goods bearing such trade marks, to wit, 'Rogers Bros. A. 1.'; 'Rogers & Bros. A. 1.', and '1847, Rogers Bros. A. 1.'"

These are the principal and most important facts. There are other facts, material to some extent, which will be noticed in their proper connection.

Two questions arise in this case. 1. Have the petitioners a right to protection in the use of the stamp, "1847, Rogers Bros. A. 1." as a trade mark. 2. Is the respondent violating that right?

1. The respondent contends that the petitioners are not entitled to protection in the use of their trade mark on several grounds. The first is, that the name, "Rogers Brothers," cannot lawfully be used by the petitioners as a trade mark, for the reason that long before the petitioners commenced to stamp their goods with that name, it had been appropriated by other manufacturers for that purpose, and it was then well known in the market as a brand for the goods of manufacturers other than the petitioners.

It is necessary to observe that the trade mark, in the use of which the petitioners claim protection, is not "Rogers Brothers," but "Rogers Bros.", with the figures "1847" prefixed, and the letter and figure "A. 1." annexed. The

combination constitutes the trade mark.    The mere fact that
the name " Rogers Brothers " had been previously used by
other persons and corporations cannot, of itself, operate to
prevent the petitioners from acquiring a right to the use of
the same name as a part of their trade mark.    All the cor-
porations which had a right to use that name had ceased to
exist on the 7th day of November, 1862.    The corporation of
" Rogers & Brother," of Waterbury, were stamping goods,
" Rogers & Brother A. 1." and " Rogers & Bro. A. 1.", but
such stamps differ from that of the petitioners, and the com-
mittee finds that the parties themselves regarded their
respective stamps as independent trade marks.    The reputa-
tion which attached to the Rogers goods had its origin in the
skill, taste, and judgment of the three brothers.    They had a
right, superior to all others, to avail themselves of that repu-
tation.    Although they had in certain instances imparted to
certain corporations the right to use their name, yet in every
instance that right was connected with their own services and
profits.    Every such corporation, except the Waterbury com-
pany, had lost or surrendered that right, by ceasing to manu-
facture goods.    The right to the use of their own name,
therefore, must revert to the Rogers brothers, or we must
practically deprive them, and, in some measure, the public,
of all future advantage to be derived from their superior
skill and industry.    Policy, as well as the dictates of reason
and justice, require the former.    The fallacy in the argument
of the counsel for the respondent seems to be this ; they
assume that the petitioners' trade mark is identical with a
trade mark adopted and used by the several partnerships and
corporations preceding them.    But it is not a case of a con-
tinuing trade mark, used by successive partnerships and cor-
porations.    It is rather a question relating to the right of
parties to the use of their own name as a component part of
several trade marks, used respectively by partnerships and
corporations with which they are connected.    Viewed in that
light, we see no difficulty in allowing these parties to use
their own names freely, except as their right to do so is lim-
ited by their obligations to the Waterbury company.    That

corporation only acquired the right from two of the brothers to use the names " Rogers & Brother," and " Rogers & Bro." That right continues and is entitled to protection as against the parties from whom it was acquired, and others claiming under them.   But they do not complain ; on the contrary the circumstances are such that both they and the petitioners are satisfied ; and we do not see that the respondent has any cause of complaint, or right to derive any advantage from the fact that the trade marks of the two parties resemble each other.   We are satisfied, therefore, that the Messrs. Rogers had, as against the respondents, a right to the use of their own names, and might under certain legal restrictions impart that right to the petitioners.

It is not denied that the parties have attempted to do so, and have in fact done so by their several contracts, so far as it may be lawfully done.   And that brings us to the next objection interposed by the respondent, which is, that this has not been done lawfully, for the reason that the name, as used by the petitioners in their trade mark, does not indicate the true origin of the goods, and that it untruthfully represents that the Rogers brothers manufacture the goods.

The principle of law underlying this objection is fully conceded ; and that is, that courts of equity will not protect a trade mark which deceives the public.   We do not suppose however that that deception need be of such a character as to work a positive injury to purchasers, nor, on the other hand, that every erroneous impression which the public or a portion of the public may receive, will be sufficient to destroy the validity of the trade mark.   The question then is, whether, in this case, the representation is of such a character as to defeat the petitioners' claim to protection.

The goods manufactured by the parties under their arrangement were manufactured under the personal superintendence of the Messrs. Rogers, or some of them, and were the product of their skill, experience and judgment.   It is unnecessary to examine in detail all the evidence contained in the report tending to prove this proposition.   The proposition itself is abundantly established.

VOL. XXXIX.—58

The first contract between the parties provided that the goods should be of a given standard and quality; that the Messrs. Rogers should direct as to the manner of stamping the goods; should approve the weight, patterns, papers, boxes, labels, &c. ; and should devote their time and skill to the procuring of orders for the sale of the goods ; that Simeon S. Rogers should superintend the weighing of spoons and forks before and after plating to determine whether they contained the required quantity of silver, and should devote his time, labor and skill in the business of cutting down, buffing, setting, papering, boxing and labelling goods. The contract in all these respects was complied with, and to that extent the goods were manufactured according to the mind and will of the Rogers brothers. It also appears that William Rogers superintended the alteration of the petitioners' dies (of which about 1500 were in use,) devised new patterns, and to a great extent remodeled the mechanical department of the petitioners' manufactory of spoons and forks, and had the general supervision of that department until the fall of the year 1865. He was then absent until March, 1868, when he returned and resumed and continued the oversight and general superintendence of that department as before, until in the winter of 1870–71, when he became incapable of doing so by reason of ill health. Since that time his son has performed to some extent the same duties. Asa H. and Simeon S. Rogers also have been employed most of the time in connection with this business. Now it distinctly appears that the goods placed upon the market under the several contracts between these parties, were not only quite up to the standard of the Rogers goods previously sold, but in some respects were superior in quality and style.

We have thus referred to details sufficiently perhaps to show conclusively that the public were in no sense defrauded by whatever representation the trade mark contained, and that such representation, so far as it indicated that the Rogers brothers were the manufacturers of the goods in question, was in an important sense true. All that the public or the trade cared to know was, that the goods were the

production of their skill and experience. That fact, as it seems to us, clearly appears. The further fact that the petitioners furnished capital and machinery, employed and paid laborers, and sold the goods, is entitled to but little weight so far as this question is concerned; although it shows that, in another sense, the petitioners were the manufacturers of the goods. · We are satisfied that there is no such misrepresentation as the cases contemplate, which hold that a trade mark which states a falsehood is not entitled to protection. If this were not enough to dispose of this objection, we might add that it does not clearly appear that the trade mark in fact represented, or caused any one to believe that the Rogers brothers were the manufacturers in any other sense than that just considered, which was, so far as we can judge, the same sense in which they had always been the manufacturers since 1853. Ever since then the name has been used in various forms, and generally in such a manner as to denote a partnership, while they were in fact but stockholders in corporations. Now if we may suppose that the public were familiar with the history of this enterprise, and the various changes stated in the report, we shall have no difficulty in supposing that when the petitioners' trade mark appeared, the name denoted what it had previously, that the goods were manufactured by some company or corporation with which the Rogers brothers were connected.

The other branch of this objection, that it did not indicate the true origin of the goods, refers mainly to the misrepresentation already considered. In other respects it has no particular force. Like all other symbols and devices used as trade marks, its import was not at first perhaps fully understood. The effect, as well as the value, of a trade mark, is the work of time and experience. This probably was no exception to the rule. However this may be, it seems to have been well understood by the trade at the date of this petition, that goods bearing that stamp were manufactured by the petitioners.

2. The next question is, whether the respondent, by the manner in which he carries on his business, interferes with

and injures the business of the petitioners.  On this question there is little room for doubt or argument.  Under his present arrangement he commenced stamping goods, " C. Rogers Bros. A 1," but since February 1st, 1872, he has stamped them, " C. Rogers & Bros. A 1."  The committee finds that these stamps resemble the petitioners' trade marks to such a degree that they are calculated to deceive, and do deceive, a class of purchasers, and that the respondent has sold large quantities of goods upon the reputation of goods bearing the stamps of the petitioners and of the Waterbury company.  It is also found that the respondent had full knowledge of the reputation of the Rogers goods, and that he supposed that the resemblance of his own to the petitioners' stamps would enable him more readily to sell his goods in the markets of the country.  The fact that he supposed he had a legal right to do so will exonerate him from any intention to do his neighbor a legal wrong ; but his mistake as to his legal rights does not lessen the injury to the petitioners. The fact that careful buyers, who scrutinize trade marks closely, are not deceived, does not materially affect the question.  It only shows that the injury is less, not that there is no injury.  Another class of purchasers, to whom large quantities have been sold, are deceived.  Such purchasers, perhaps, will have no reason to complain ; as they, if they are injured by the deception, must attribute the injury to. their own want of diligence.  But the petitioners stand on entirely different ground.  No amount of diligence on their part will guard against the injury.  An injunction is their only adequate remedy ; and to that we think they are entitled.

It only remains for us to consider the extent to which the remedy should be applied.  The prayer of the petition. is, that the respondent may be enjoined from using the stamp, " C. Rogers Bros. A 1," or any stamp of which the word " Rogers," or the words " Rogers Bros.," shall form the whole or a part, and from selling goods so stamped, or stamped with any stamp so nearly resembling the petitioners' stamp, " 1847, Rogers Bros. A 1," as to be likely to deceive purchasers.  We think the petition should be granted so far

Meriden Britannia Co. *v.* Parker.

as to restrain the use of the stamp specified, and also to restrain the use of the words " Rogers Bros." But the use of the name " Rogers" ought not to be prohibited. We cannot say that every use of that name will necessarily infringe upon the petitioners' trade mark. If it may be so used as not to infringe, it would be manifestly unjust to forbid such use by the respondent, inasmuch as his title to the mere name is as good apparently as the petitioners.' Even if the use of the name should in some degree increase the respondent's sales, and thus, at least indirectly and remotely, injure the petitioners, it is an injury to which they must submit, unless there is such resemblance to the petitioners' stamps as to induce purchasers to believe that they are purchasing the petitioners' goods. The use of a prominent name in a trade mark will necessarily give rise to some embarrassment of this character, and those so using it must be presumed to take the risk.

The respondent should also be enjoined from selling goods bearing such stamps which were manufactured. since the service of the petition, or which may hereafter be manufactured. But we think it proper in the circumstances not to extend the injunction to goods which were already manufactured and stamped at the time the suit was brought, or which were in process of manufacture and so far advanced in the process as to be stamped. These goods may be sold to purchasers who will not be misled by the stamps, and an absolute prohibition of their sale might do some injustice to the respondent. Without therefore intending to concede his right to sell these goods so as to injure the petitioners, we think it proper in the circumstances not to prohibit the sale, but to leave the petitioners to their remedy at law for any injury that may be actually done by the sale.

. The general prayer that the respondent. be enjoined from selling goods stamped with a stamp so nearly resembling the petitioners' stamp that it is calculated to deceive, &c., is too vague and uncertain to be of any practical benefit if granted. The resemblance and deception are matters of fact to be determined in each case. *Boardman* v. *Meriden Britannia Company,* 36 Conn., 207.

We advise the Superior Court to render judgment for the petitioners to the extent indicated above.

In this opinion the other judges concurred.