## The Solis Cigar Co. v. Pozo & Suarez.

1. Trade-mark — What is Essential to Its Legal Protection as Property.— A trade-mark may consist of a name, a device, or a peculiar arrangement of words, or of words with some device of greater or less novelty. Words and devices of common use in a particular trade, as "Fabrica Tobacos" in the tobacco trade, are not of themselves the subject of a trade-mark, but used in connection with other words or devices the whole may constitute a valid trade-mark, which will be entitled to legal protection as property.

2. What Constitutes an Infringement.— While exact similarity is not necessary to constitute an infringement, and colorable imitations are as much the subject of legal redress as the most perfect similitudes, yet the use of a label will not be restrained on the ground that it infringes the device of another party unless the trade-mark taken as a whole — words, pictures, lines and devices — are so similar that a purchaser using the ordinary care and caution which may be expected of the purchasing public would likely mistake one for the other.

3. Example — Two Trade-marks that Do Not Infringe.— A trade-mark consisting of the works "EL CABIO" at the top, under them the picture of a tobacco plant in bloom, the words "FABRICA TOBACOS" on either side of the plant, beneath the plant the manufacturer's name, "De R. Solis," under that the word "HABANA," lower down the word "Copyrighted," and at the bottom of the label the words "R. Solis, Manufacturer, Denver," is not infringed by a label consisting of a picture of a tobacco plant in bloom, having the words "EL CAVIO" on either side of the flowers; the words "FABRICO TOBACOS" on either side of the stem,

and beneath them the firm name, "DE POZO & SUAREZ," below the picture the word "HABANA," and at the bottom of the label the words "Pozo & Suarez, Manufacturers, Denver, Colo." Had the words "EL CABIO," together with the picture, constituted the Solis trade-mark, the infringement might have been complete; but it took these words, the picture and the words "FABRICA TOBACOS," and "De R. Solis" to make the brand.

4. TRANSFER OF TRADE-MARK, AND RIGHTS OF ASSIGNEE.— An assignee of a trade-mark is entitled to the same protection as the original owner; and in the absence of a formal transfer, where the trade-mark is used by a company, one of whom is the original owner, and it is manifest from the circumstances that its use was continued by his consent and procurement, equitable relief against an infringement will not be denied the company by reason of the informality of the transfer.

5. FALSE REPRESENTATIONS OF TRADE-MARKS DEPRIVE THEIR OWNERS OF LEGAL PROTECTION.— Some sorts of deception may be practiced by the representations of a trade-mark without loss of the right to legal protection against its infringement, such as matters that would neither be considered nor depended on by purchasers of the manufactured articles, as the word "Copyrighted," when in fact the protection of the statute had not been secured. But the deception must not relate to any particulars which the label protects, nor the representations be false to any of its leading elements. The use of the word "Habana" on a cigar label, when the cigars on which the label appears are only Havana filler, is such a deceit on the public that equity will furnish no relief against an infringement.

*Appeal from Superior Court of Denver.*

IN January, 1887, the Solis Cigar Company filed its bill against Pozo & Suarez, seeking to restrain them from interfering with a trade-mark which the company claimed to own, and to recover damages.

It appears that several years prior to the alleged infringement R. Solis had been a manufacturer of cigars in Denver, and had adopted the brand to which the company claim title. The corporation was organized after the adoption of the brand. Mr. Solis became a large stockholder in it, turned over to the corporation his whole business, good-will and trade, and became the manager of it. It sufficiently appeared that the company succeeded to whatever rights Solis had, and, while he made no formal transfer of

his trade-marks, he turned over to the company all his rights of that description. The two brands, so far as they can be described without pictures, are as follows:

The Solis brand was a picture of a tobacco plant, with a foreground of land, a background of water, with sky in the distance, and flowers on the stem projecting above the leaves. On the top of the label were the words in capitals, " EL CABIO." A little over one-third of the way down, and on either side of the picture, were the words, in capitals, " FABRICA TOBACOS," and below and underneath those " DE R. SOLIS." Resting on the ground was the word, in capitals, " HABANA," and below that, in smaller type, the word " Copyrighted." At the bottom of the label were the words " R. Solis, Manufacturer, Denver."

The type in which this label was printed was clear cut, with fancy lines and terminals to various of the letters, as in E, L and C, etc.; the cross, for instance, on the middle stem of the E was an upright line, terminating in a scroll at either end. These were the characteristics of the type used on that label.

The other label was a picture of a tobacco plant, topped with three flowers, instead of seven, which were on the first brand, but without a visible stem. The plant rested on the ground, with some growing plants underneath, but there was no water in the background, nor any sky. It was simply the plant on a blue background, which was the prevailing color of the El Cavio brand. On either side of the flowers were the words " EL CAVIO," and on either side of the plant, arranged as in the other brand, were the words " FABRICO TOBACOS," and beneath them " DE POZO & SUAREZ." Below the plant was the word " HABANA," in capitals, and at the bottom of the entire label were the words " Pozo & Suarez, Manufacturers, Denver, Colo."

The type of the two brands was totally dissimilar; that of the El Cavio brand being fanciful, and the other plain and unornamental.

It appeared in evidence that the plaintiff had made large sales of cigars in boxes with its brand on. Proof was offered of some sales of cigars under the brand complained of as an infringement; but there was no proof of any sales of the one for the other, nor that any purchaser was deceived by the resemblance in the labels. The case was equally silent as to any interference with the plaintiff's trade growing out of the use of the label by the defendants. The intention of the defendants to pirate the plaintiff's brand was shown, but upon the question of the difference in the quality of the two brands of cigars there was a conflict of testimony. The cigars which were sold under the plaintiff's brand, according to his own testimony, were made of what is known to the trade as "Havana filler, seed binder, and Sumatra wrapper." The only portion of the cigar which was made of the Havana tobacco was the filler. The binder was of domestic production, and the wrapper was of tobacco imported from the island of Sumatra. This seems to have been a matter well understood by the trade, for the cigars were not sold to the wholesale dealers as cigars made wholly of Havana tobacco, but were sold as seed Havana cigars. According to the evidence, the trade never labels domestic cigars, or cigars made partially of domestic tobacco, as seed Havana, but labels all cigars, both those made of Havana filler, seed binder and Sumatra wrapper, and those made entirely of Havana tobacco — filler, binder and wrapper — as Havana cigars, preserving the distinction in their dealings with each other by calling the first "Seed Havana," and the last "Clear Havana."

From the labels the public cannot determine whether the cigar is made wholly of Havana tobacco, grown on the island of Cuba, or is a mixture of imported and domestic tobacco; nor do the labels signify to what extent Cuban tobacco is used in the manufacture. The words "Fabrica Tobacos" and "De R. Solis" are simply the application of the use of the Spanish language in the brand, and mean the manufactured tobacco of R. Solis. The words "El

Cabio " have a direct significance, and mean either a small door, or a little window in a door. The words " El Cavio " have no recognized significance, although there was some testimony which indicated that they meant a sort of a little apple tree growing in the Asturias. On this point, however, the testimony was not satisfactory. Upon the conclusion of the testimony the bill was dismissed, and a decree entered accordingly. This is assigned as error, and the plaintiff appeals.

Mr. W. S. DECKER and Mr. A. B. McKINLEY, for appellant.

BISSELL, C. The right which a manufacturer has in a trade-mark is everywhere recognized as property. The mark may consist of a name or a device or a peculiar arrangement of words, or such words with some device of greater or less novelty, which have been applied to a manufacture to designate the goods as made by a particular person. When a manufacturer has thus distinguished the goods he makes by a peculiar device, so that they may be known in the market as his, he thereby acquires the right to whatever profits may result from his superior skill, knowledge or honesty of process; and this right may not be impaired by any piratical use of the devices which serve to mark them, and lead the public to think that they are his. The legal right to the use of the trade-mark springs from its usefulness to point out the original ownership of the article to which it is affixed, or to give notice to the public who is the producer. From this right the power of legal protection is derived. The first difficulty which arises here is to determine the question of infringement. Exact similarity is not necessary. To insist on that would be to permit most wrong-doers to evade responsibility. Colorable imitations are as much the subject of legal redress as the more exact and perfect similitudes. What is necessary in all cases is a similarity which will operate to convey a

false impression to the ordinary purchaser, and serve to deceive and mislead him. The rule is grounded as much on the notion that the public is to be protected as on the theory that the inventor may have the exclusive benefit of the reputation acquired by the thing which he has produced. For this reason it is always essential to show that the imitation is of a character to escape the ordinary care and caution used in the purchase of the articles protected. The case made is not brought within the limits of this rule. It is difficult to declare the legal extent of the plaintiff's right. The words "Fabrica Tobacos" are words of common use in the tobacco trade, and have been, for many years, in Spanish-speaking communities, applied to all known manufactured products of the plant. Alone they could not be the subject of a trade-mark. *Gilman v. Hunnewell*, 122 Mass. 139.

Had these words, or the picture, been novel, and used in combination without more, some basis might be found for the claim that they made a trade-mark. But the picture of the plant, in connection with these or similar words, has been for many years used to designate the manufactured article. The two alone would not, under the testimony, serve the purpose. To all this was added the cabalistic words "El Cabio" and the name "De R. Solis." As a whole, there was produced that which would constitute a trade-mark according to accurate legal definition. When, however, the whole was looked at, there was no room for the deception of the purchaser by the use of the piratical design — the El Cavio brand. Doubtless it was designed and selected without the honesty of purpose which usually animates all fair business competition. It seems to have been chosen to gain some possible advantage; but it does not come up to the necessities of the rule. "El Cavio" alone, if the words "El Cabio" had been all of the device, might have infringed. Had the words, with the picture, together, constituted the trade-mark, then the infringement might have been complete; but it took the words, the pict-

ure, and the words " Fabrica Tobacos " and " De R. Solis," to make the brand. In that complained of there were the words " El Cavio," the picture of the tobacco plant, and the words " Fabrico Tobacos De Pozo & Suarez." In either case, the whole taken together constituted the device. It is unnecessary to discuss the lack of similarity in the pictures; for, while one was artistic and pretty, with its land, water, and sky, and the other was a pictorial failure, and nothing but a naked plant of poor design and inartistic finish, there was enough resemblance to deceive. To each, however, is attached the name of the manufacturer in bold type. If the purchaser was looking for the " El Cabio de Solis," he would not be misled by the " El Cavio de Pozo & Suarez." It is agreed by all the authorities that the court will not restrain a defendant from using a label on the ground that it infringes the plaintiff's device, unless the trade-marks, taken as a whole, — words, pictures, lines, and devices,— are so similar that the purchaser, using the ordinary care and caution which may be expected of the purchasing public, would likely mistake the one for the other. This cannot, on the case as made, be held to be likely to occur. No purchases of one for the other were shown, nor was any proof of that sort offered. It did not appear that any trade had been lost, nor that any customer, retail or wholesale, had been misled. While in this class of cases actual damage need not be shown in order to recover for the piracy, yet it is a strong circumstance to influence the court on a bill for an injunction, filed before the right has been established by an action at law, especially where the infringement is more speculative than absolute. There was a clear failure of the strong proof which courts of equity require before they grant injunctive relief. *McLean v. Fleming*, 96 U. S. 245; *Blackwell v. Wright*, 73 N. C. 310; *Popham v. Cole*, 66 N. Y. 69; *Gilman v. Hunnewell*, *supra*.

On the trial of the case the court denied the injunction, and placed the decision on the principle that, to entitle a complainant to the protection afforded by the exercise of

equitable powers, the device which served to inform the public must be honest, not only in its suggestions of place of manufacture, and persons producing, but in the statements of the composition and material of the product. The rule was accurately stated, and the only question is as to the applicability of the doctrine. It was manifest that the original trade-mark had been adopted by R. Solis. He had devised and applied it to the El Cabio brand of cigars. The Solis Company, however, by transfer and succession came into the right to use the brand. After the organization of the company, by the consent and procurement of the original owner, who was the largest individual stockholder of the concern, they continued the use of the mark. It is true that there was no formal transfer of the right, but the circumstances clearly manifest the intention of the parties, and the case becomes one of a continuing trademark in the possession of a corporation which succeeded to all the rights, good-will and trade of the former owner. In such a case the corporation would be treated as the equitable owner. At any rate, the respondent could not be heard to complain, and the plaintiff would not be denied relief on that ground.

The other branch of the question — deceit of the public — is not so free from difficulty. If it be conceded that the trade-mark tended to deceive the public in any material particular, the relief must be denied. Below the picture of the tobacco plant, it will be remembered, were the words " Habana,"? " Copyrighted." They were words of definite meaning to the trade, and probably of equally certain significance to the public. They were not, however, as is clear from the evidence, of the same import to each class. The word " Copyrighted " meant the same to everybody. It implied that the protection of the statute applicable to such matters had been secured. This was probably believed to be true, but was without foundation. The misrepresentation, however, was unimportant. It did not tend to deceive the public in respect to any of those

matters with which the law concerns itself. The public might buy with the same reliance on all the representations as to the place of production and ownership whether the marks were protected by the statute or guarded only by the appropriation and user of its owner. This element would neither be considered nor depended on by the purchaser, whether he was in or out of the trade. With regard to the word "Habana," the case is not so easy of settlement. This was expressive of a quality, and an absolute representation of the material of which the cigars were made. Some sorts of deception may be practiced without loss of right to the legal protection usually given this species of property. It is possible for the proof to show that the public received an erroneous impression, which would not of itself be sufficient to destroy the validity of the trade-mark. Neither need the deception be of such a character as to work a positive injury to the purchasers to deprive the user of his exclusive privilege. In the first case it must not concern any of the essential particulars which the trade-mark protects, and in the latter it must not be absolutely false as to any of its leading elements. *Britannia Co. v. Parker*, 39 Conn. 450; *Medicine Co. v. Wood*, 108 U. S. 218.

That the representation made by the trade-mark as to the materials of which the cigars were made are of the sort which the law says must appear to be absolutely truthful, where its protection is sought, there can be no question. They are of what is by all the authorities recognized as the substance of the device. Such words are used to lead the public to believe that the article sold possesses certain qualities known to belong to such material. They are used to influence the public to buy because of the public taste for such things. It seems clear that under the proof this case is brought within the full scope and application of this principle. The word "Habana" must be taken as a part of the mark which the plaintiff wants protected. It is on a conspicuous part of the label. It is in large, bold-faced

type, to catch the eye of the purchaser. It is evidently designed to attract his attention. Like the other words, it is Spanish, and commonly used in the country where that sort of tobacco is grown. The whole purpose of the manufacturer was evidently to lead the public to believe that the cigar was made of that tobacco which is so much sought after and preferred by the smoking public. Yet it was not wholly true. The plaintiff admitted that the cigars sold under that brand were made of Havana filler, seed binder and Sumatra wrapper. Nothing but the filler came legitimately within the definition of Havana tobacco. It clearly appeared that there was a broad distinction made in the trade between seed, seed Havana and clear Havana cigars. One was made wholly of domestic tobacco; one of domestic and imported Cuban and Sumatra tobaccos; the third of tobacco wholly grown in Cuba. Only the last was sold as clear Havana, and that was always sold by the use of the word " clear " joined to Havana. It is evident that custom would not permit the trade to be deceived. Strict honesty was observed in all dealings with wholesale purchasers, but little attention was given to the opinions of the purchasing public. They were neither expected to know, nor was it desirable that they should learn. The maker was wholly indifferent to the impression which they might receive. Such a course is in contravention of the principles observed by courts of equity in the administration of this branch of the law. These courts have adopted rules which are founded in honesty and good sense, and which are designed to rebuke fraud, and encourage fair dealings with the public. Judged by these rules, as they have been communicated and applied, this case had no standing in court, and the bill was properly dismissed. The judgment should be affirmed.

REED and RICHMOND, CC., concur.

PER CURIAM. For the reasons stated in the foregoing opinion the judgment is affirmed.

*Affirmed.*