[No. 1240.]

SCHRADSKY v. THE APPEL CLOTHING CO.

1. INJUNCTION—IRREPARABLE INJURY.

Injunction should be used only to prevent irreparable injury to him who seeks its aid, and while the rigid, narrow and unpliant construction of the word "irreparable" which formerly prevailed has given way to an enlarged and more liberal interpretation, still before this remedy can properly be invoked it must clearly appear that the threatened injury is one of a serious character.

2. SAME—ADEQUATE REMEDY AT LAW.

The writ of injunction should not issue restraining the commission of an act simply because such act would be an infringement upon the rights of, and cause damage to another. While it is not required as a condition precedent to the issuance of the writ, that the applicant should be wholly without remedy at law, yet the writ should

not issue if it appears that the applicant has an adequate remedy at law. And the rule still remains in force that he who seeks an injunction must come into court with clean hands and a clear conscience.

*Appeal from the District Court of Arapahoe County.*

Mr. ALFRED MULLER and Mr. JOHN R. SMITH, for appellant.

Mr. I. N. STEVENS, for appellee.

WILSON, J., delivered the opinion of the court.

The parties to this suit were each engaged in the general clothing and gents' furnishing goods business in the city of Denver. In October, 1894, appellee, who was plaintiff in the trial court, purchased from the mortgagees, a stock of goods of a bankrupt firm, Garson, Kerngood & Company, which had been engaged in a like business in the same city. In a few days thereafter, plaintiff commenced this suit, alleging that the defendant by means of advertising in the press and by placards displayed in the windows of his store and paraded through the streets, was misleading and deceiving the public by tending to induce the belief that he had purchased this bankrupt stock, and praying for an injunction to restrain such acts. A temporary injunction as prayed for was issued without notice. Defendant answered setting up that he had purchased goods which had been manufactured for Garson, Kerngood & Company upon their order some of which had been shipped to them but not received and some portion had not been shipped at all on account of the failing credit of the firm. He alleged that he was simply advertising these goods as having been ordered by, and manufactured for said bankrupt firm, and denied that he was claiming or advertising in such a manner as to induce the belief that he had purchased the stock of the firm on hand in their store in Denver. He also set up affirmatively that the plaintiff was misleading

and deceiving the public by materially false statements in its advertisements as to the value of the stock of goods purchased and the discount price on the cost at which it had been obtained.

The answer was under oath.  Defendant then filed a motion for a dissolution of the injunction, which was denied. Upon final hearing, judgment and decree was in favor of plaintiff and the injunction was made perpetual.  From this defendant appealed to this court.

In any view which we take of this case as presented by the record, we cannot see how it shows a state of facts which would justify the court in the affirmance of the judgment.

We cannot approve a practice nor subscribe to a doctrine which permits the exercise by courts of the extraordinary power of injunctive relief for every wrong or infringement upon the rights of another.  Such a course of procedure, if carried to its ultimate natural conclusion, would tend to entirely subvert the fundamental principles upon which our system of laws is founded.

Injunction has been properly styled the strong arm of equity to be used only to prevent irreparable injury to him who seeks its aid.  It has never been found possible to lay down any exact rule regulating or controlling the exercise of this power by the courts, but it is an extraordinary power, and there is a universal concensus of authority, both in England and America, that it should be used only with the most extreme care and caution.  Its abuse would serve not only to render the law absolutely uncertain, by substituting for its established principles the varying opinions of judges differing in temperament, education, knowledge and disposition, but would in the end induce far more grievous wrongs than those it was intended to prevent.

It is as a remedy more flexible and adjustable to circumstances than any other legal process, and it is true that the last two decades have brought about greatly changed conditions in society and business.  In consequence there have been necessitated to meet these altered conditions some modifica-

tions in and relaxations of the rules formerly applicable to the law of injunction. In doing this, however, it is a mistake to assume that all of the old principles underlying it have been abandoned, and that all of the old landmarks have been destroyed. The rigid, narrow and unpliant construction of the word "irreparable" which formerly prevailed has long since given way, even where no statute expressly requires it, to an enlarged and more liberal interpretation in accord with the more advanced requirements of the times, with the more enlightened spirit of the age and with the increased necessities of trade and commerce. It still remains true, however, that before this remedy can properly be invoked it must clearly appear, that the threatened injury is one of a serious character.

It by no means follows that a writ of injunction should issue, restraining the commission of an act simply because that act would be an infringement upon the rights of, and cause damage to another. It is true that this frequently offers a seductive and expeditious method of making a temporary, at least, disposition of an unpleasant emergency, if a kindly disposed judge can be found, but the final consequences do not always tend to inspire increased respect for the law nor encourage its stricter observance. Nor should it always issue even though the menaced damage might be serious. It is true that it is not required as a condition precedent that an applicant for the issuance of this writ, should be wholly without remedy at law, but it is still conceded that, as a general proposition, the writ will not issue if it appears that the applicant has an adequate remedy at law.

The rule also still remains in force that he who seeks an injunction must come into court with clean hands and a clear conscience.

The charge that defendant in his advertisements or placards claimed to have been the purchaser of the stock of goods was not sustained by the evidence. He did claim to have bought and have on sale, goods manufactured for Garson, Kerngood & Company, and this he had an equal right with plaintiff to

do, as there was testimony to support the pretension and as plaintiff had purchased only the stock on hand in the Denver store.

The attempt to show that in the printed matter undue prominence was given to the words " Garson, Kerngood & Co.," and that the words " manufactured for " were too inconspicuous, was also a failure so far as we can judge from the exhibits attached to the record. It would in any event be imposing too heavy a burden upon an appellate court in ordinary cases to require it to measure the type in which rival tradesmen proclaim the virtues of their wares, and it would be still more difficult for the court to determine what particular word, line or sentence of a printed poster would be most likely to attract the public eye and impress itself upon the public mind. The public eye is too varying and uncertain and its mental impressions are not measured or controlled by any fixed rule of which we have knowledge or to which we have been cited.

According to the plaintiff's complaint the damage which it anticipated was that the public would be misled and deceived by the alleged false publications of defendant and this was set up as the ground upon which it prayed an injunction. Even if this be true the plaintiff itself was not entirely guiltless in this respect and did not come into court with clean hands. It advertised in the public press that the purchased stock was of the value of $136,451.28, and that it had been bought by it at 42 cents on the dollar. This would have made the purchase price over $57,000, whereas the evidence showed that the sum actually paid was only $31,000, and the testimony of a competent and disinterested witness placed the value of the whole stock when new, at not to exceed $50,000. If the injunctive power of the court should have been invoked to prevent the public from being deceived about this transaction, surely the plaintiff should not have escaped. In this regard the case, although not exactly parallel as to its facts comes clearly within the principles so well expressed by our supreme court in *The Solis Cigar Co. v. Pozo & Suarez*, 16 Colo. 397.

We by no means hold that in no case should a court interfere by injunction to prevent a tradesman being unwarrantably deprived of the benefits which he could reasonably anticipate as a reward for his enterprise in the legitimate advertisement of his business. Such a case might arise, but even then it should be carefully scrutinized to the end that the court be not made simply an instrument to enable one tradesman to secure an unfair and unconscionable advantage over a rival in business. We do say however, that the facts in this case, as gleaned from the record, are not sufficient to justify such an interference. The damage, if any, could be expected, was entirely too doubtful, speculative and remote. The threatened injury, if there was one, was neither so imminent nor so great that there was not a complete and adequate remedy at law, and the conduct of plaintiff itself was not of such a character as to give it high standing in a court of equity.

For the reasons given the judgment and decree will be reversed and the cause remanded to the trial court with instructions to dissolve the injunction and dismiss the bill.

*Reversed.*