## Louis Wormser v. Louis F. Shayne, sued, etc.

### Gen. No. 11,050.

1.    TRADE-NAME—*when person has proprietary right in a.* Where a person is the original appropriator of a trade-name, employs it in his business, advertises it, and establishes a reputation in connection therewith, he acquires a right of property therein, which will be protected by injunction in a court of equity.

2.    TRADE-NAME—*what does not defeat the right to protect a, in a court of equity.* The mere fact that a person who has a lawful property in a trade-name has sought to deceive the public by false representations, does not defeat his right to protect such a trade-name in a court of equity, where such false representations were with respect to immaterial matters and the trade-name itself does not contain any misrepresentations.

Wormser v. Shayne.

3. TRADE-MARKS—*not affected by copyright laws.* The copyright laws of the United States do not apply to trade-marks.

4. MISREPRESENTATION—*when trade-name does not include a.* Where in connection with the use of a trade-name the word " copyright " is used, when no copyright actually exists, it cannot be said that such trade-name includes a misrepresentation which will defeat the right of the owner to protect such trade-name by injunction in a court of equity; nor does the fact that, in connection with the use of such trade-name, the owner thereof falsely claimed that he had ten stores located in various cities, when, in fact, he had but seven, defeat such right of protection.

Bill for injunction to restrain use of trade-name. Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in this court at the March term, 1903. Reversed and remanded. Opinion filed January 14, 1903.

RINGER, WILHARTZ & LOUER, for appellant.

MOSES, ROSENTHAL & KENNEDY, for appellee.

**Statement by the Court.** The bill in this case was filed June 26, 1902, and in it it is averred, in substance, that for more than eight years complainant has been engaged in the business of buying and selling men's hats in Chicago and other cities, his principal place of business being 360 S. State street, in the city of Chicago, and that he conducted a like business for many years at 80 S. Halsted street, 170 Clark street, and 884 Milwaukee avenue, in said city, and also in the cities of Indianapolis, Indiana, Milwaukee, Wisconsin, and Boston, Massachusetts; that his principal business during said years was selling hats at the uniform price of one dollar each, and that he had adopted the method of advertising his business of placing one dollar bills in the hats exhibited by him in his show windows; that for at least eight years he had conducted all of his business under the name " The Model," and has acquired, by long usage, a property right in said name, as applied to the sale of hats for one dollar each, and especially so at 360 S. State street, his said principal place of business; that prior to his adoption of said name no other person or corporation has used said name, as designating a brand or grade of hats; that

since adopting said name he has expended at least $2,000 in advertising said hats under the name of "The Model"; that by reason of an alliance with a manufacturer in the State of Massachusetts, from whom he purchases hats in very large quantities, he has been enabled to obtain and offer to the public the "Model" hats at one dollar each, vastly superior in grade and value to hats offered by other dealers at a like price, and that he, having attached to each hat so sold a label containing the words "The Model," has established a reputation among the public of selling, as "The Model" hat, the best dollar hat on the market; and he has sold vast numbers of said hats; that he has used, inside and outside his places of business, signs on which appear the words "The Model," and, by means of the premises, has established a brand or grade of hats known in the city of Chicago, and among the hat trade in general, by the name "The Model," and a great and constantly increasing demand for said hats has been created, and he has been enabled to sell and dispose of large quantities of said hats; that his claim and title to the exclusive use of said trade name, "The Model," and the use of the advertising method of placing a dollar bill in each hat, as aforesaid, was acquiesced in by the manufacturers and sellers of hats until about March 15, 1902; that for about two years prior to the last mentioned date, L. F. Shayne occupied 358 State street, the next store to complainant's said principal place of business, and conducted therein "a business for the sale of furnishing goods and shoes;" and there was a sign on said store so occupied by him on which were the words, "The Boston Shoe Company," but, about March 15, 1902, said Shayne having learned of complainant's success, and for the purpose of deceiving complainant's customers and the public, changed his business, by adding a line of hats, and took down the signs theretofore appearing on his place of business, and, instead thereof, placed on his said premises a sign reading "The Medal One Dollar Hats," and placed other signs on his said premises containing the words, "The Medal," and placed a dollar bill in each of the hats displayed by him in

his windows and show cases, and thereby did deceive a large number of people, and led them and the public to believe that the business conducted by him was complainant's business, and did offer for sale and sell hats of an inferior quality, for the purpose of inducing complainant's customers and the public to believe that said hats were "The Model" hats sold by complainant. The bill then avers that, by means of the premises, said Shayne has succeeded in depriving complainant of a large volume of business, etc. The bill prays an injunction against the use of the words "The Model," or any other name in imitation of the words "The Model," on Shayne's premises, 358 S. State street, or on premises adjacent to complainant's premises, etc.

The oath of the defendant Shayne to his answer is waived, and the answer, in so far as it is directly responsive to the allegations of the bill, consists mainly of general denials; but the answer sets up, as an affirmative defense, alleged inequitable conduct of the complainant, and avers, in substance, the following instances of such alleged misconduct : complainant held himself out, in his advertisements and in connection with said stores, and particularly his store at 178 Clark street, as the father of the dollar hat business, and exhibited pictures in his windows to the effect that he has large manufacturing rooms, such as forming, blocking, trimming and finishing rooms, in which men and women are supposed to be employed making hats, which advertisements are false and for the purpose of leading people to believe that he is a hat manufacturer; that, in one of his windows is the following :

"On the q.-t. Some people say, if these hats are all fur and silk trimmed, how can we sell them for $1.00. It is an open secret; we are the manufacturers; we are the jobbers; we are the retailers of the Model $1.00 hat."

On one of his show windows at 360 S. State street, these words are, in large letters : "Manufacturers, Jobbers and Retailers," and on certain hat cleaners made of black felt, on which is sewed white satin, are the words : "Manufacturer's sample. Hats latest style. Chicago, Milwaukee,

St. Paul, Indianapolis, ten stores;" while, when said label
or card was made, he had only seven and now has only
eight stores.    He displays in the north window of 360 S.
State street a card, on which are these words :

"Imitations.    Beware of them.    We manufacture our
own hats.    We sell only all fur, silk trimmed late style
$1.00 hats in the market."

At the bottom of one of his windows is a large wooden
sign reading, " Original $ Hat Store," which is for the pur-
pose of increasing his patronage, when, in truth, his is not
the original dollar hat store; that in the inside of hats sold
by him appears a label on which are the words, " The
Model," next below the words " The Model " the word
" Trade-mark," and below the latter " Copyrighted," and
that on one label the words " Ten Stores " appear, whereas
complainant had only seven stores, etc.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of
the court.

We are of opinion that the complainant, appellant here,
is entitled to relief on the facts stated in his bill, in other
words, that the bill is sufficient; and the only question here
is, whether the complainant has been guilty of such inequi-
table conduct in relation to the subject-matter of the bill as
precludes him from relief in equity.    This is admitted by
counsel for the defendant, in their printed argument, they
saying :

' " The question before the court, under the assignment of
errors, is whether the affirmative defense of appellee is good
in law."

The evidence abundantly shows that appellant held him-
self out to the public and his customers as the manufacturer
of hats which he sold  under the name " The Model," and
also shows, his own testimony included, that he was not the
manufacturer of the hats, but purchased them from a man-
ufacturer in the State of Massachusetts.    It further appears
that he held himself out as a manufacturer as a reason why
he could sell the hats at the price of one dollar.    In the

south window of his State street store, which, in his bill, he avers was his principal place of business, he displayed a card containing the following :

" On the Quiet.  Some people say if these hats are all fur and silk trimming, how can we sell them for a dollar. It is an open secret.  We are the manufacturers; we are the jobbers; we are the retailers of the one dollar hat."

The question is, whether the fact of the complainant's falsely holding himself out as the manufacturer of the hats which he sold as "The Model" hats, for the purpose of misleading the public to believe, that, being such manufacturer, he could and did sell such hats for one dollar each, was such conduct as to preclude him from relief.

Defendant's counsel, in support of their contention that complainant has been guilty of inequitable conduct which precludes relief, cite numerous cases, without comment and without statement of the precise questions decided; among these are the following :

In Manhattan Med. Co. v. Wood, 108 U. S. 218, the complainant claimed as its trade-mark the description " Atwood's Vegetable Physical Jaundice Bitters."  The original manufacturer of the article was Moses Atwood of Georgetown, Massachusetts, and the court say :

" It is admitted that whatever value the medicine possesses was given to it by its original manufacturer, Moses Atwood."

The complainant claimed by various *mesne* assignments from Moses Atwood, and manufactured the medicine in New York.  The court refused the relief prayed, saying :

" A court of equity will extend no aid to sustain a claim to a trade-mark of an article which is put forth with a misrepresentation to the public as to the manufacturer of the article, and as to the place where it is manufactured, both of which particulars were originally circumstances to guide the purchaser of the medicine."

In Marsh v. Warren, 14 Blatchford, 262, the complainant dealt in plasters sold by the name " Benson's Capcine Plasters," and claimed a registered trade-mark in the word " Capcine."  The court held the plaintiff not entitled to

relief on the ground that the trade-mark was a false representation, saying:

"It is shown that there is no such article as capcine known in chemistry or medicine or otherwise."

In Hobbs, Agt., v. Francais, 19 How's Prac. 567, the complainant adopted as the name of the article which he sold "Meen Fun," which he used on a label placed on the article. The court denied relief. The court say:

"The plaintiff's label is calculated to induce the belief, and probably was designed to induce the belief, that the article in the box on which it is pasted is manufactured in London; that the sole proprietors of it have their place of business at 24 Mark Lane, London; that it is intrinsically so excellent as to secure the patronage of Her Majesty, the Queen; and that the labels have paid the stamp duty required by some English statute. The truth is, that it is made in New York, and that Her Majesty, the Queen, is probably ignorant of its virtues, or even of its existence. In this respect there is a manifest intention to deceive and mislead the public."   *   *   *   "It appears by the defendant's affidavit that it is the prevailing belief in this country that ladies' toilet articles of English or French manufacture are superior to those made in this country, and that the demand for the former is much better than for the latter. The plaintiff's labels therefore contain representations believed to be useful, and which must be known to be false; and to secure to the plaintiff by injunction an exclusive use of such a label, and the exclusive privilege of thereby deceiving the public, is an object to which a court of equity will not lend its aid."

In Connell v. Reed, 128 Mass. 477, the complainant claimed the words "East Indian," in connection with the word "remedy," as a trade-mark on bottles of medicine. The evidence was that the complainant used the words to denote and to indicate to the public that the medicine was used in the East Indies, and that the formula for it was obtained there, neither of which was a fact. The court say: "Under these circumstances, to maintain this bill would be to lend the aid of the court to defraud the public." And the court dismissed the bill.

In Palmer v. Harris, 60 Penn. St. 156, the complainant

claimed, as a trade-mark for cigars sold by him, and which he manufactured in New York, the words " Golden Crown," which words he used on a label on his boxes indicating the belief that the cigars were " the product of a factory of cigars from the best plantations de la Vuelta Abajo Calle del Agua, Habana." The complainant was denied relief, the court saying :

" The party who attempts to deceive the public by the use of a trade-mark which contains on its face a falsehood as to the place where his goods are manufactured, in order to have the benefit of the reputation which such goods have acquired in the market, is guilty of the same fraud of which he complains in the defendant."

In Helmbolt, Agt., v. Henry T. Helmbolt Manufacturing Co., 53 How. Prac. 454, the complainant claimed, under an order of the bankrupt court, to use the name " H. T. Helmbolt's Highly Concentrated Compound Fluid Extract of Buchu." Henry T. Helmbolt was the original compounder of the medicine, and used that name to designate it. Complainant used the name on a label placed on its bottles connected with words, in respect to which the court say :

" It will be observed that the effect of the label, as used by the plaintiff, is to assure the public that the preparation put up by him, and which he charges to be ' a useful and valuable article,' is not only the original medicine manufactured by H. T. Helmbolt, but that it is also prepared under the latter's personal supervision, and its usefulness and efficacy are guaranteed by his personal reputation and experience."

For the reasons thus stated relief was denied.

In Cheavin v. Walker, 5 Ch. Div. 850, the complainant used, on a label, the name " C. G.'s Improved Patent Gold Medal Selfcleaning Rapid Water Filters." The court held on appeal that the name was not a trade-mark, and that the label, coupled with the medallion of the royal arms, constituted a false representation that the patent was still subsisting, and dismissed the bill. Ib. 862.

We do not regard the foregoing cases, or other cases cited by defendant's counsel, as applicable to the facts of the

present case. The complainant here claims solely the exclusive right, by reason of prior appropriation and use in his business, to use the words " The Model " as designating the one dollar hats sold by him. The name itself does not include any misrepresentation whatever as to the hats, and is not in any way calculated to mislead, deceive or defraud the public or purchasers of the hats. It is not averred, nor does it appear from the evidence that any dealer in, or manufacturer of hats, has used those words to designate hats sold or manufactured by him, nor that any hats so designated, other than the complainant's, have acquired a reputation in the market. The mere representation, by advertisements and signs, that he is the manufacturer, cannot, under these circumstances, defraud his customers or the public. It was, therefore, unimportant and immaterial to the public generally, and to complainant's customers, by whom the hats were manufactured. As we understand the law, the statement or misrepresentation must be material in order to preclude the relief prayed. In Leather Cloth Co. v. Am. Leather Cloth Co., 4 De G., J. & S. 137, the Lord Chancellor, delivering the opinion of the court, says :

" If the plaintiff makes any material false statement in connection with the property he seeks to protect, he loses, and very justly, his right to claim the assistance of a court of equity." Ib. 142.

In Browne on Trade-marks, 2d Ed., Sec. 71, the author, after stating the rule as to the prevention of relief, by the inequitable conduct of the complainant, and citing numerous cases, illustrative of the rule, says :

" But it must be remembered that, in all the above cases, fraud was a predicate. Where no actual fraud is shown, and no intention to *harmfully* mislead purchasers, manifested by the use of instrumentalities that would naturally tend to that result, the rule does not apply," citing cases which fully support the text, among which is Meriden Britannia Co. v. Parker, 39 Conn. 450.

The case is stated substantially correctly in a note to 26 Am. & Eng. Ency., pp. 467–8, as follows :

" Rogers Bros., having acquired a reputation for the

manufacture of plated spoons and forks, entered the employ of complainants, who then marked their spoons and forks, '1847, Rogers Bros., A 1.' Suit was brought to restrain imitation. The defense was misrepresentation as to manufacture. Carpenter, J., said: 'All that the public or the trade cared to know was that the goods were the production of their (Rogers Bros.') skill and experience. That fact, as it seems to us, clearly appears. The further fact that the petitioners furnished capital and machinery, employed and paid laborers, and sold the goods, is entitled to but little weight so far as this question is concerned; although it shows that, in another sense, the petitioners were the manufacturers of the goods. We are satisfied that there is no such misrepresentation as the cases contemplate, which hold that a trade-mark which states a falsehood is not entitled to protection.' "

The court, in its opinion, uses the following language:

" It was understood by wholesale dealers generally that goods stamped with the petitioner's trade-mark were manufactured by the petitioners, under the superintendence of the Rogers Brothers, while consumers generally understood that the Rogers Brothers were themselves the manufacturers. Such understanding on the part of the consumers was induced in part by the trade-mark, and in part by circulars, billheads, correspondence, etc." 39 Conn. 454.

The court further say, p. 456:

" The reputation which attached to the Rogers' goods had its origin in the skill, taste and judgment of the three brothers," meaning the Rogers Brothers.

The court, after stating circumstances showing that no actual fraud or injury occurred to purchasers of the goods, by reason of the representation as to their manufacture, held that the petitioner was entitled to relief.

We are of opinion that the complainant's holding himself out as the manufacturer of the hats in question was not calculated to injuriously deceive or defraud any person, and is not sufficient to disentitle him to relief. See, also, Schumacher v. Schwenke, 36 Pat. Office Gaz. 457, referred to in 26 Am. & Eng. Ency. 458.

The evidence shows that complainant used a label in connection with his hats, around which, in circles, appear the names of seven cities, in the center of which are the words

"The Model," below these words the word "Trade-mark," and below that the word "Copyrighted," and below the word "Copyrighted" the words "10 stores." Appellee's counsel contend that the word "Copyrighted" and the words "10 stores" were misrepresentations, precluding relief. The act of Congress in regard to copyrights does not apply to names or trade-marks. 3 U. S. Compiled Stat. 1901, p. 3406; and Sec. 3 of an act, passed in 1874, amendatory of the copyright law, excludes trade-marks from the operation of the act. Ib., p. 3412. See, also, Browne on Trade-marks, Secs. 109–112.

Even if a name or trade-mark could be copyrighted under the statute, the defendant offered no evidence that the name in question was not copyrighted. Counsel for complainant say, in their argument, that it was conceded, at all times, that complainant had no registered trade-mark, but claimed a common law trade-mark, and property interest in the words, "The Model," as used by complainant. An act of Congress provides for the registration of trade-marks. 3 U. S. Comp. Stat. 3401–3405.

Even though the statute in regard to copyrights included trade-marks, the use of the word "copyright" on complainant's labels, the name claimed not having been copyrighted, would not, in the opinion of the Supreme Court of Colorado, preclude him from relief. Solis Cigar Co. v. Pozo, et al., 16 Colo. 388.

We do not regard the circumstance that the complainant claimed by his labels, etc., that he had ten stores, when he had only seven, as precluding relief, nor do we so regard any of the other circumstances relied on by appellee's counsel. Our conclusion is that the complainant, on proof of the facts averred in his bill, will be entitled to relief, by injunction restraining the defendant from using the words, "The Medal," to designate men's one dollar hats, and that the affirmative defense of the defendant is insufficient to preclude such relief.

The decree will be reversed and the cause remanded, with directions to proceed in accordance with the views herein expressed.                    *Reversed and remanded.*